COLE, Respondent, v. THE CITY OF BRITTON, Appellant.

(260 N. W. 266.)

(File No. 7728.   Opinion filed April 16, 1935.)

*Harold W. King* and *Otto L. Kaas,* both of Britton, for Appellant.

*W. H. Morgan,* of Britton, for Respondent.

ROBERTS, J.   Plaintiff, administratrix of the estate of George Cole, deceased, brought this action against the city of Britton for damages for negligently causing the death of plaintiff's intestate.

George R. Cole was employed during a portion of the month of June, 1931, by the city of Britton.   On the 25th of that month he assisted in moving a band stand from the city park in Britton to the fair grounds, a distance of several blocks.   As the building was being moved, decedent assisted in raising electric light and other wires over the building.   They came to an electric high line which was higher than the building, but below this high line were two electric lead wires to a residence.   When decedent attempted to pass the second of these lead wires to a helper on the roof of the

building, an electric current passed from the high line to the wire in his hand. He was severely burned, fractured his spine when the shock caused him to fall from the roof of the building, and a week later died as a result of such injuries. Defendant moved for a directed verdict at the close of plaintiff's case and again at the conclusion of the evidence. This the court refused to grant. The jury returned a verdict for plaintiff, and from the judgment entered thereon defendant has appealed.

Plaintiff bases her right of recovery on the contention that the city failed in its duty to exercise ordinary care to furnish to her intestate a reasonably safe place to work and reasonably safe appliances with which to work. The city answered with a general denial, and affirmatively pleaded that Cole was not in the employment of the city at the time of his fatal injury; that the building was not moved under the direction of the city or its officers; and that if any employee of the city was assisting in the moving of the building at the time mentioned in the complaint, such employee was acting beyond the scope of his employment and was so engaged upon his own responsibility.

It is urged by defendant that there was not sufficient evidence in the record to warrant submission to the jury. If plaintiff prevails, liability must rest on the existence of the relation of employer and employee at the time of the accident. If the relation was temporarily suspended while decedent was assisting in moving the building or if the injuries were not received within the scope of his employment, defendant cannot be held liable for his acts while so engaged. It appears from the undisputed evidence that the city gave the fair association permission to move and use the band stand. H. B. Sherburn employed by the fair association, and his employees, placed the building on moving trucks, but the power used to move the building was a caterpillar tractor operated by Ira J. Bilyou, an employee of the city. Sherburn testified: "I had to do the pulling and I went to see Bert Carver to see if he would let me do it with one of his tractors but he couldn't and said, 'See if I couldn't get the city 'Cat.' I went to Bilyou to see if he would move it. He had just pulled in beside the water tank when Bert and I were talking. Bert said to see maybe Bilyou would pull it down. I did see him right away. He said he would pull it down the next morning at seven o'clock. * * * George Cole was there

that morning. I don't know how he happened to be there. At the time I thought he was just a sight-seer. The first I noticed him after we started out was when we got to the wires leading to the library. He was then upon the building. I didn't send him up. * * * I talked with Bilyou and said, 'What is George doing up there,' and he said, 'He is working for the city and he didn't have anything else to do so I thought I would bring him along.' In a way I didn't have any supervision or control over either Bilyou or Cole. I knew Mr. Bilyou was working for the city, and Mr. Bilyou said Cole was."

■ ■ It is contended that if the evidence was sufficient, if believed, to sustain the conclusion that Bilyou was directed by the mayor to move the building, the record does not disclose that decedent was instructed by the city to assist. No arrangement having been made between defendant city and Sherburn or the fair association for the services of decedent, the evidence does not present a situation where the services of an employee were transferred to a second employer. He was acting outside the scope of his regular employment at the request of Bilyou, another employee of the city. Express authority was not delegated to Bilyou to direct other city employees, but it is contended that he having authority to act for the city in employing laborers had implied authority to direct such persons. Witness Bilyou testifying for the plaintiff was asked these questions: "To what extent did your authority extend?" "What authority did you receive from him (mayor) as to the employment of labor in this city?" "Did you receive authority from him to employ men to do work in and about the city?" And, "What authority did you receive?" The witness was permitted to answer these and similar questions over objections, and the rulings of the court have been assigned as error. It was competent for the witness to state the facts and circumstances concerning transactions between him and the mayor, leaving to the court and jury under the facts disclosed whether or not he had the alleged authority; but it was error to permit the witness to state his conclusions. These erroneous rulings require a reversal, and we do not determine the question whether authority of Bilyou to direct decedent to assist him may be implied from the nature or necessity of the work.

The judgment and order appealed from are reversed.

All the Judges concur.