BERNADINE WILES, d/b/a CENTERVIEW TAXI v. RALPH P. MULLINAX,
JR., AND MULLINAX INSURANCE AGENCY, INC.

No. 36

(Filed 11 July 1969)

1. **Insurance §§ 4, 6; Appeal and Error § 68— construction of insurance binder — former appeal**

   Construction of alleged insurance binders and their legal effect are questions for the court, not the jury, and determinations of these questions by the Supreme Court upon a prior appeal are conclusive.

2. **Contracts § 12; Insurance § 6— construction of two attached documents**

   Two sheets attached together as parts of a single communication must be construed as one document.

3. **Insurance § 4— sufficiency of purported binder**

   Document setting forth terms of former workmen's compensation insurance policy issued to plaintiff by one company and document attached thereto purportedly binding a second company to provide like coverage for plaintiff upon expiration of the old policy *are held* sufficient, when construed together, to constitute a binder for the second company to provide such coverage effective upon expiration of the old policy.

4. **Insurance § 4; Principal and Agent § 5— issuance of binders—authority of insurance agent—credibility of evidence**

   The credibility of testimony by insurance agent that he issued alleged insurance binders and of the evidence of his authority from the insurance company to issue such documents is for the jury to determine.

5. **Insurance §§ 2, 4, 11— failure of agent to procure insurance coverage — binders — authority of agent**

   Defendant insurance agents would not be liable in this action for damages allegedly sustained as a result of their negligent failure to procure for plaintiff a renewal or rewriting of workmen's compensation insurance if they issued a binder for such coverage on behalf of either of two insurance companies, and if they had authority from either company to issue such a binder for it, there being no contention and no evidence that any binder issued by defendants for either insurance company was cancelled by such company in the manner prescribed by G.S. 97-99(a).

6. **Insurance §§ 2, 4; Principal and Agent § 5— extent of insurance agent's authority — competency of testimony by agent**

   Testimony by an insurance agent as to the extent of his authority to bind an insurance company for a particular risk is competent upon that question, though not conclusive.

7. **Insurance §§ 2, 4; Principal and Agent § 5— authority of insurance agent to issue binder — competency of company's application form**

   An application form issued by an insurance company for use by its agents and acknowledged by defendant insurance agent to have been in

his office at the time an alleged insurance binder was issued by the agent on behalf of the insurance company, which form states that under certain conditions the agent may not bind the risk, is competent upon the question of the authority of the agent to issue such a binder.

**8. Insurance § 4;    Principal and Agent §§ 5, 7—    insurance binders — limitations on agent's authority**

Where all the evidence is to the effect that plaintiff, at the time in question, knew nothing of an alleged agency of defendant for a particular insurer and did not know that an alleged binder for plaintiff's coverage had been issued by defendant on behalf of such insurer, rules applicable to apparent authority do not apply, and a limitation upon the authority of defendant agent to issue such binder, imposed by the insurer and communicated to the agent, is effective though the limitation was not known to plaintiff and though it was forgotten or overlooked by the agent at the time the supposed binder was issued; such limitation may, however, be rescinded by habitual disregard of it acquiesced in by the insurer.

**9. Insurance §§ 2, 4;    Principal and Agent § 5—    agency agreement — authority to issue insurance binders — evidence of issuance of such binders by agent**

Where defendants' agency agreement with an insurance company does not state clearly their authority to issue binders for workmen's compensation insurance but is susceptible to such construction, testimony by the individual defendant that from time to time, prior to and since the date in question, defendants have issued such binders on behalf of the insurance company would be sufficient, if found to be true, to establish the construction of the agency agreement by the parties thereto, and would be sufficient evidence to support a finding that they had such authority generally.

**10. Insurance §§ 2, 4;    Principal and Agent § 5—    limitation on authority of agent to issue binder**

Limitation placed by insurance company on authority of insurance agents to bind a risk which had been rejected by another insurer, if found by the jury to have been in effect at the time the alleged binder in question was issued, would deprive the agents of the authority to issue such binder on behalf of the insurer, where the evidence shows that the alleged binder was issued by the agents after they were notified that another insurer refused to issue the proposed policy.

**11. Insurance §§ 2, 4;    Trial § 35—    agent's failure to procure insurance — binders — instructions — burden of proof**

In this action for damages allegedly sustained as the result of the negligent failure of defendant insurance agents to procure for plaintiff a renewal or a rewriting of workmen's compensation insurance and their negligent failure to notify plaintiff that they had not obtained such coverage, defendants contending that plaintiff had such coverage on the date in question through binders issued by them on behalf of two separate insurance companies, the court erred in giving the jury instructions which left the

jury free, in its unguided discretion, to find that defendants negligently failed to procure such coverage for plaintiff even though it believed defendants' evidence that they issued one or both of the alleged binders and had authority from the company or companies to do so, such instructions erroneously placing upon defendants the burden of proving their performance of their undertaking.

**12. Evidence § 5—   burden of proof**

Plaintiff must allege and prove all the essential elements of his cause of action, even though stated in the negative form.

**13. Evidence § 9—   definition of affirmative defense**

Affirmative defenses are those which, in their nature, admit the matters so alleged by the plaintiff but assert other matters which, if true, will defeat plaintiff's right to recover.

**14. Insurance §§ 2, 11—   agent's failure to procure insurance — burden of proof**

In an action for damages allegedly sustained as a result of the negligent failure of defendant insurance agents to procure for plaintiff a renewal or rewriting of workmen's compensation insurance, failure of defendants to procure the insurance coverage for plaintiff in accordance with their undertaking is an essential element of plaintiff's cause of action and she has the burden of proof upon that phase of the case.

**15. Trial § 35—   burden of proof — conflicting instructions**

Instruction erroneously placing the burden of proof of an issue upon defendant is not cured by an earlier instruction which correctly placed the burden of proof of that issue upon plaintiff, since the jury cannot be deemed to have acted upon the correct instruction.

**16. Insurance §§ 2, 11;   Evidence § 22;   Judgments § 36—   competency of opinion and award of Industrial Commission — res judicata**

In this action for damages allegedly sustained as a result of the negligent failure of defendant insurance agents to procure for plaintiff a renewal or rewriting of workmen's compensation insurance, the trial court erred in the admission of an opinion and award of the Industrial Commission in which it was found that plaintiff had no compensation insurance on the date in question where defendants were not parties to the proceeding before the Industrial Commission, the Commission's findings therefore not being res judicata as to defendants and not competent in this action.

**17. Insurance §§ 2, 11;   Damages § 13;   Trial § 6—   amount of damages stipulated — competency of evidence of damages**

Where the parties stipulated the amount of damages recoverable, if any, in this action based upon the alleged negligent failure of defendant insurance agents to procure for plaintiff a renewal or rewriting of workmen's compensation insurance, neither a workmen's compensation award by the Industrial Commission to the widow of plaintiff's deceased employee nor portions of defendants' further answer with reference thereto are admissible in evidence, the issue of damages no longer remaining in the case, and the trial court should allow defendants' pretrial motion that plaintiff be

instructed not to refer, in the presence of the jury, to the Industrial Commission award or to allegations in the pleadings relating thereto.

**18. Insurance §§ 2, 4, 11; Trial §§ 6, 40— negligent failure of insurance agent to procure insurance — stipulations — binders — authority of agent — issues for jury**

In this action for damages allegedly sustained as the result of the negligent failure of defendant insurance agents to procure for plaintiff a renewal or rewriting of workmen's compensation insurance and their negligent failure to notify plaintiff that they had not obtained such coverage, wherein the parties stipulated that defendants undertook to procure such insurance for plaintiff and the amount of damages recoverable, if any, and defendants conceded that they did not notify plaintiff of any failure to procure such coverage, defendants contending that they had in fact obtained for plaintiff workmen's compensation insurance through binders issued by them on behalf of two named insurance companies, the only issue for jury determination is whether defendants failed to procure for plaintiff workmen's compensation insurance as they undertook to do, and the answer to this issue will turn upon the jury's findings as to whether the defendants issued the alleged binder on behalf of either company and whether, if they did, they had authority from such company to bind it upon such risk.

SHARP, J., concurring in part, dissenting in part.

BOBBITT, J., joins in concurring and dissenting opinion.

On certiorari to the Court of Appeals to review its decision reported in 4 N.C. App. 73.

This is an action to recover damages for a loss alleged to have been sustained by the plaintiff as the result of the negligent failure of the defendants to procure a renewal or rewriting of workmen's compensation insurance coverage for the operation of her taxicab business and their negligent failure to notify her that they had not obtained such coverage.

Upon the first of two former appeals in this matter, reported in 267 N.C. 392, 148 S.E. 2d 229, a judgment of nonsuit was reversed. Upon retrial in the superior court, judgment was entered for the plaintiff upon a verdict in her favor. On appeal therefrom, reported in 270 N.C. 661, 155 S.E. 2d 246, a new trial was ordered. Upon the third trial in the superior court, the verdict of the jury was again in favor of the plaintiff and from judgment thereon the defendants appealed to the Court of Appeals. That court ordered another new trial, this being the decision now under review.

The Court of Appeals ordered a new trial on two grounds: (1) The superior court erred in permitting the plaintiff to introduce into evidence, over objection, the opinion and award of the North Carolina Industrial Commission in a proceeding instituted before it against the

present plaintiff and others by the widow of her deceased employee, to which proceeding the present defendants were not parties; (2) the superior court erred in that the effect of its charge to the jury was to place upon the defendants the burden of proving that they had procured the desired insurance coverage.

In the most recent trial in the superior court, the following issues were submitted to the jury without objection by either party:

"1.  Did the defendants undertake to procure workmen's compensation insurance coverage for the plaintiff, as alleged in the Complaint?

"2.  Did the defendants negligently fail to procure such workmen's compensation insurance coverage, as alleged in the Complaint?

"3.  Did the defendants fail to timely notify the plaintiff of their failure to procure workmen's compensation insurance coverage, as alleged in the Complaint?

"4.  What amount of damages, if any, is the plaintiff entitled to recover of the defendants?"

The jury answered the first three issues "Yes" and the fourth issue "9,300.00," having been instructed, by consent of the parties, so to answer the first issue.

The complaint alleges that the damages sustained by the plaintiff consisted of $8,400 paid by her, pursuant to the award of the Industrial Commission, as compensation to the widow of her deceased employee, $400 paid by her, pursuant to that award, for funeral expenses, and $500 paid by her as a fee to her attorney for representing her before the Industrial Commission. In the course of the most recent trial in the superior court, counsel for the defendants stipulated that the plaintiff had paid out these amounts. Prior to the commencement of the trial, counsel for the defendants filed a written motion that the plaintiff and her counsel be instructed not to mention in the presence of the jury the decision of the Industrial Commission, stipulating therein that the plaintiff would be entitled to recover these sums, totaling $9,300, if it should be determined that the defendants had negligently failed to procure for the plaintiff the insurance coverage.

The defendants have never contended that, prior to the death of the plaintiff's employee, they notified her that her former policy of insurance, procured for her by them, had expired or that they informed her of their efforts to obtain coverage for her with other insurance companies or of the results of those efforts. Their contention throughout the litigation has been that, at the time of the accident in which the plaintiff's employee was killed, the plaintiff had workmen's compensa-

tion insurance coverage as the result of binders issued by the defendants for her benefit, binding both the Royal Indemnity Company and the Dixie Fire and Casualty Company. The individual defendant testified that he did not notify the plaintiff of any of these matters because she was insured by reason of the binders. It is stipulated that he was at all times an agent of the corporate defendant and acted within the course and scope of his employment.

*Williams, Willeford & Boger for plaintiff appellant.*

*Hartsell, Hartsell & Mills, by William L. Mills, Jr., K. Michael Koontz and Boyd C. Campbell, Jr., for defendant appellees.*

LAKE, J.

Upon the first appeal in this matter, reported in 267 N.C. 392, 148 S.E. 2d 229, we held that, when an insurance agent or broker undertakes to procure a policy of insurance for another and is unable to do so, it is his duty to give timely notice of such failure to his customer and, if he fails to do so, he is liable for the damage which his customer suffers as the result of such lack of insurance. Upon the second appeal, reported in 270 N.C. 661, 155 S.E. 2d 246, we held that the defendants, having introduced evidence from which the jury could have found that there was in effect, at. the time of the accident, a valid contract of workmen's compensation insurance procured for the plaintiff by the defendants, the defendants were entitled to argue this contention to the jury and were entitled to have the jury instructed upon the principles of law applicable thereto. Obviously, if the defendants procured for the plaintiff the insurance coverage they undertook to procure and that coverage was in effect at the time of the event against which the plaintiff was to be insured, the defendants are not liable to the plaintiff in this action.

At the trial now under review, the parties stipulated that the defendants undertook to procure workmen's compensation insurance coverage for the plaintiff as alleged in the complaint. The amount of damages recoverable, if any, was also stipulated. The defendants have never contended that they notified the plaintiff of any failure by them to procure the insurance coverage they undertook to procure. Their contention throughout has been that they did procure such coverage and hence there was no occasion to give any such notice to the plaintiff. Both the plaintiff and the individual defendant testified that no such notice was given to the plaintiff.

[18]   Thus, the sole question for the jury at the trial now under review was whether, at the time of the accident, there was in effect

WILES *v.* MULLINAX

workmen's compensation insurance coverage procured by the defendants for the plaintiff.

The defendants contend that there was then in effect such coverage by reason of an alleged binder issued by them as agent for Royal Indemnity Company and also by reason of an alleged binder issued by them as agent for Dixie Fire and Casualty Company. The alleged binders are the same documents which were before us upon the second appeal, except that in the present record there is an additional document (defendants' Exhibit E) which the defendants now contend was a part of the alleged binder issued by them as agent for Royal Indemnity Company.

[1] Upon the second appeal we held that the alleged Royal Indemnity Company binder, in the form then before us (defendants' present Exhibit D) was not a binder affording insurance coverage to the plaintiff at the time of the accident for the reason that, by its terms, it covered a different period of time. We also held upon the second appeal that the alleged binder for Dixie Fire and Casualty Company (defendants' present Exhibit G) was sufficient in form and content to constitute a valid binder. As we there said, the construction of these documents and their legal effect were questions for the court, not for the jury. *Strigas v. Insurance Co.,* 236 N.C. 734, 73 S.E. 2d 788; *Atkinson v. Atkinson,* 225 N.C. 120, 33 S.E. 2d 666. Our determinations of these questions upon the second appeal are conclusive. *Horton v. Redevelopment Commission,* 266 N.C. 725, 147 S.E. 2d 241; *Glenn v. Raleigh,* 248 N.C. 378, 103 S.E. 2d 482.

Upon the retrial following our decision on the second appeal, the defendants introduced in evidence a new document, their present Exhibit E. The individual defendant testified at the retrial that Exhibit E is a copy of a sheet originally attached to and part of Exhibit D (the document before us on the second appeal) but which had become detached therefrom and lost. Exhibit E. of itself, is not sufficient to constitute a binder though the word "Binder" is written upon it. It cannot be determined from this paper alone what insurance coverage was contemplated. It is addressed to Royal Indemnity Company from the corporate defendant. It states that it is with reference to the plaintiff and further states, "The above mentioned policy expires 11/8/58. Please renew this policy for us." The policy to be "renewed" is not identified on Exhibit E. No other material information appears upon it.

[3] The individual defendant testified on retrial that Exhibit D is "a copy of the front page of the last insurance policy that was issued" (i.e., a policy issued by another company for which the defendants

were then agents) and, with the original of Exhibit E attached thereto, was sent by him to Royal Indemnity Company prior to the accident in which the plaintiff's employee was killed. That is, the individual defendant testified on retrial that Exhibit D set forth the terms of the former policy, which was to expire 8 November 1958, and Exhibit E showed a binder had been issued by the defendants for a replacement policy, with like terms, to be issued by Royal, effective upon the expiration of the old policy.

[2, 3] Two sheets, attached together as parts of a single communication, must, of course, be construed as one document. See: *Stein v. Outdoor Advertising,* 273 N.C. 77, 159 S.E. 2d 351; *Robbins v. Trading Post,* 253 N.C. 474, 117 S.E. 2d 438. So construing Exhibits D and E, we hold that these documents were, in form and content, sufficient to constitute a binder for Royal Indemnity Company covering the period of time in which the accident occurred. The difficulty with reference to the period to be covered by the policy to be issued by Royal, noted in our opinion on the second appeal, is removed by Exhibit E if the testimony of the individual defendant with reference to that document is accepted as true.

[4, 18] The credibility of the testimony of the individual defendant to the effect that he did issue Exhibits D and E, or either of them and that he did issue Exhibit G on the account of Dixie Fire and Casualty Company and of the evidence of his authority from the insurance company in question to issue any such document is for the jury to determine. In view of the above mentioned stipulations and the testimony of the individual defendant that no notice of failure to obtain the desired insurance was given the plaintiff, there was no other question for the jury to determine at the third trial. *Heating Co. v. Construction Co.,* 268 N.C. 23, 149 S.E. 2d 625.

[5] Here, as in the trial reviewed by us upon the second appeal, there was no contention, and no evidence to show, that any binder issued by the defendants, as agent either for Royal Indemnity Company or for Dixie Fire and Casualty Company, was cancelled by such company in the manner prescribed for such cancellation by G.S. 97-99 (a) and *Moore v. Electric Co.,* 264 N.C. 667, 142 S.E. 2d 659. Thus, if the defendants had authority from either insurance company to issue a binder for it in this instance and if the defendants did issue the alleged documents for such company (Exhibit D plus Exhibit E as to Royal Indemnity Company; Exhibit G as to Dixie Fire and Casualty Company), the defendants would not be liable to the plaintiff in this action for the reason that, in such event, the defendants procured for the plaintiff the insurance they undertook to procure. If neither insurance company was so bound, the defendants would be liable in

the amount stipulated, for the evidence of both parties is that no notice of any failure to procure such insurance was given to the plaintiff.

**[6]** We observe with interest that at none of the three trials of this action has the jury been favored by either litigant with testimony of any official of either insurance company concerning the authority of the defendants to bind it in this instance. The testimony of the individual defendant as to the extent of his authority, and that of the corporate defendant, so to bind either or both of the two insurance companies was, of course, competent upon that question though not conclusive. *Sealy v. Insurance Co.,* 253 N.C. 774, 117 S.E. 2d 744.

**[7]** Plaintiff's Exhibit 13 was also competent upon that question with reference to Dixie Fire and Casualty Company. This is an application form issued by that company for use by its agents and acknowledged by the individual defendant to have been in the office of the defendants at the time the alleged binder was issued. This form contained the following:

> "6a. Has any policy been cancelled or has any other Insurance Company refused to write a new policy or as a renewal in the past two years? If so, give date, reason and name of such Insurance Company. *(NOTE: If so, do not bind the risk.)"* (Emphasis added.)

**[8]** The binder alleged to have been issued on behalf of Dixie Fire and Casualty Company could not constitute a defense in this action unless, at the time of the accident resulting in the death of the plaintiff's employee, it constituted a valid contract of insurance between Dixie Fire and Casualty Company and the plaintiff. It did not constitute such contract unless the defendants had actual authority from Dixie Fire and Casualty Company to issue the binder on its behalf. We are not here concerned with apparent authority of the defendants to bind the Dixie Fire and Casualty Company since all of the evidence is to the effect that the plaintiff, at the time in question, knew nothing whatever of the alleged agency of the defendants for that company and did not even know the alleged binder had been issued. Under such circumstances, a limitation upon the authority of an agent, imposed by the principal and communicated to the agent, is effective though the limitation was not known to the third party (the plaintiff) and though it was forgotten or overlooked by the alleged agent at the time the supposed contract was made. See: *R. R. v. Smitherman,* 178 N.C. 595, 101 S.E. 208; 3 Am. Jur. 2d, Agency, § 314. Such limitation may, of course, be rescinded by habitual disregard of it acquiesced in by the principal. See 3 Am. Jur. 2d, Agency, § 352.

[9]    Testimony of the individual defendant, at the most recent trial in the superior court, was to the effect that the defendants, from time to time, prior to and since their alleged issuance of the document in question, issued binders for workmen's compensation insurance coverage as agent for Dixie Fire and Casualty Company. Their agency agreement with that company (defendants' Exhibit K) does not state clearly their authority to issue binders for workmen's compensation insurance, but it is susceptible to the construction that they had such authority generally. The testimony of the individual defendant that such binders had been issued on behalf of Dixie Fire and Casualty Company by the defendants, if found by the jury to be true, would be sufficient to establish the construction of the agency agreement by the parties thereto and would be sufficient evidence to support a finding that the defendants had such authority generally. See: *Trust Co. v. Processing Co.*, 242 N.C. 370, 379, 88 S.E. 2d 233; 3 Am. Jur. 2d, Agency, § 352.

[10]    There is, however, in the record before us no evidence that the defendants had ever issued on behalf of Dixie Fire and Casualty Company a binder for a risk which had been rejected by another insurance company. The testimony of the individual defendant is that the alleged binder on behalf of Dixie Fire and Casualty Company was issued by the defendants following their receipt of a communication from Royal Indemnity Company that it would not issue the proposed policy for the plaintiff. The insufficiency of that communication to constitute a cancellation of the alleged binder issued on behalf of Royal Indemnity Company does not alter the fact that the company had "refused to write a new policy" covering the plaintiff's risk. Nothing else appearing, the limitation above quoted from plaintiff's Exhibit 13, if found by the jury to have been in effect at the time the alleged binder was issued, would deprive the defendants of such authority as they might otherwise have had to issue a binder on behalf of Dixie Fire and Casualty Company for the plaintiff's risk.

[11]    The trial judge first instructed the jury that the burden of proof upon the second issue was on the plaintiff, but thereafter charged: "Now, members of the jury, the document which the defendants contend bound the Dixie Insurance Company on this risk is, in form and content, sufficient to constitute such memorandum of a contract for temporary coverage. And, if you find from the evidence and by its greater weight the supporting evidence concerning the binder, the date which it was mailed to the Dixie Insurance Company, the receipt thereby, the contract between the Dixie Insurance Company and the defendants, if you find the supporting evidence to be true, the same

is *sufficient for you to find* that there was a valid binder issued by the Dixie Insurance Company." (Emphasis added.)

The court's final instruction upon this point was: "The Court charges you that if you believe the evidence of the defendant, you *could* find that there was a valid binder, as the contents of the instrument to Dixie Insurance Company are, in form and content, sufficient to constitute such a memorandum. If you believe the evidence offered by the defendants and if you find the same to be true, *it would support* a finding that a valid binder was issued by the Dixie Insurance Company and the defendant so argues and contends." (Emphasis added.)

These portions of the charge were error prejudicial to the defendants in that by them the jury was left free, in its unguided discretion, to answer the second issue in favor of the plaintiff even though it believed the defendants' evidence that they did issue one or both of the alleged binders and had authority from the company or companies so to do.

The Court of Appeals held that the instruction, first above quoted, was error in that it placed upon the defendants the burden of proving their performance of their undertaking, notwithstanding the court's earlier instruction that the burden of proof upon the second issue was upon the plaintiff. We agree.

[12-14]　We are not here concerned with the burden of going forward with evidence to overcome a prima facie case, or to rebut a presumption or inference arising from a failure of a party to offer evidence of facts peculiarly within his own knowledge. See: *Anthony v. Express Co.,* 188 N.C. 407, 124 S.E. 753, 36 A.L.R. 460; 29 Am. Jur. 2d, Evidence, § 131. We are here concerned with burden of proof in its proper sense; i.e., the burden of persuading the jury, all the evidence being in. The test is not whether the specific issue is affirmative or negative in form. *Williams v. Insurance Co.,* 212 N.C. 516, 193 S.E. 728; Stansbury, North Carolina Evidence 2d, § 208; 29 Am. Jur. 2d, Evidence, § 130. The plaintiff must allege and prove all the essential elements of her cause of action, even though stated in negative form. Affirmative defenses, with a few exceptions not here material, are those, which in their nature, admit the matters so alleged by the plaintiff but assert other matters which, if true, will defeat the plaintiff's right to recover. In the present matter, failure of the defendants to procure insurance coverage for the plaintiff, in accordance with their undertaking, is an essential element of the plaintiff's cause of action and she has the burden of proof upon that phase of the case.

[15]　The instruction above quoted being error, it would not be cured by the earlier, correct instruction that the burden of proof upon the second issue was on the plaintitff. Where the jury is left with both a

correct and an incorrect instruction upon the same point, the jury cannot be deemed to have acted pursuant to the correct instruction. *Owens v. Kelly,* 240 N.C. 770, 84 S.E. 2d 163; *Hartley v. Smith,* 239 N.C. 170, 79 S.E. 2d 767.

[16]    The Court of Appeals correctly held that it was prejudicial error to admit into evidence, over the defendants' objection, the copy of the award and opinion of the North Carolina Industrial Commission. The opinion stated that the Commission found the plaintiff "had no workmen's compensation insurance with the defendant insurance carriers" (Royal Indemnity Company and Dixie Fire and Casualty Company), and concluded that these insurance companies "had no workmen's compensation insurance policy in force for the protection of defendant employer (the present plaintiff) at the time of the injury by accident" giving rise to the proceeding before the Commission.

As we stated upon the second appeal, the present defendants were not parties to the proceeding before the Industrial Commission and, consequently, the existence or nonexistence of insurance coverage for the plaintiff, at the time of the accident to her employee, is not res judicata as to these defendants by virtue of the findings, conclusions and award of the Commission. That being true, the finding of the Industrial Commission upon that question was not competent evidence in the trial of this action. *Warren v. Insurance Co.,* 215 N.C. 402, 2 S.E. 2d 17; Stansbury, North Carolina Evidence 2d, § 143; Strong, N. C. Index 2d, Evidence, § 22.

The competency of the opinion and award of the Industrial Commission as evidence in the present action was not before us upon either of the former appeals. The first, being an appeal by the plaintiff from a judgment of nonsuit, did not present the question of the competency offered by her and admitted. The record upon the second appeal shows that the plaintiff introduced the opinion and award of the Commission into evidence, over objection, at the trial then under review and that the defendants originally assigned this as error. However, this assignment was not brought forward by the defendants in their brief filed in this Court upon the second appeal and, therefore, was not before us upon that appeal, having been abandoned. Rule 28 of the Rules of Practice in the Supreme Court; Strong, N.C. Index 2d, Appeal and Error, § 45, and cases there cited. The statement in our opinion upon the second appeal that we found no error in the rulings of the trial court with reference to the admission of evidence related, of course, to the rulings which were before us on that appeal. Those were rulings of the trial court excluding evidence offered by the defendants. They had no relation to the admission in evidence of the findings, award and opinion of the Industrial Commission.

[17]    Upon the trial now under review, the stipulation as to the amount of damages recoverable, if any, removed from the case the only issue as to which the award and opinion of the Industrial Commission was competent evidence. *Heating Co. v. Construction Co.,* *supra.* As the Court of Appeals observed, the above quoted findings of the Industrial Commission went far beyond the allegations by the defendants in their fourth further answer and their admission into evidence was highly prejudicial to the defendants upon the second issue.

For the same reason, it was error to permit the plaintiff to introduce in evidence portions of the defendants' fourth further answer. Ordinarily, as the Court of Appeals said, admissions by a party in his pleadings may be introduced into evidence by his adversary, though, being judicial admissions, it is not necessary to do so in order to obtain the benefit of them. However, all of the allegations in the fourth further answer related properly to the question of whether the plaintiff paid compensation to the widow of her employee under the compulsion of a valid award by the Industrial Commission; that is, to the issue of the amount of damages recoverable by her, if any. The defendants having stipulated the amount recoverable, if any, after the filing of this answer, this issue no longer remained in the case. *Heating Co. v. Construction Co., supra.* These allegations, which would have been competent upon the issue of damages had it remained for determination, were highly prejudicial to the defendants upon the second issue even though not so devastating in effect as the statements in the opinion of the Industrial Commission.

In view of the stipulation as to damages recoverable, if any, the superior court should have allowed the pretrial motion of the defendants that the plaintiff be instructed not to refer, in the presence of the jury, to the award and opinion of the Industrial Commission or to allegations in the pleadings with reference thereto.

[18]    There must be still another trial of this action. At that trial, by reason of the stipulations, above referred to, and the concession by the defendants as to the absence of any notice by them to the plaintiff concerning the presence or absence of insurance coverage, the only issue to be determined by the jury is, Did the defendants fail to procure for the plaintiff workmen's compensation insurance coverage as they undertook to do? The answer to this issue will turn upon the jury's findings as to whether the defendants issued on the account of Royal Indemnity Company the documents designated in the present record as defendants' Exhibits D and E, or issued on the account of Dixie Fire and Casualty Company the document designated in this record as defendants' Exhibit G, and whether, if they did, they had authority from such company to

bind it upon such risk. Only evidence relating to these matters and otherwise competent should be introduced at the new trial. If the jury answers the issue "Yes," judgment should be entered for the plaintiff for $9,300. If the jury answers the issue "No," judgment should be entered in favor of the defendants.

Modified and Affirmed.

PARKER, C. J., did not participate in the decision of this case.

SHARP, J., concurring in part, dissenting in part:

The following facts — which constitute plaintiff's case — are either stipulated or are not controverted:

Defendant is a duly licensed fire and casualty agent as defined by G. S. 58-39.4(1). (In this opinion no distinction will be made between the individual and the corporate defendant.) On 8 November 1952 defendant undertook to procure workmen's compensation insurance for plaintiff, a customer entitled to "automatic renewals." For six years thereafter defendant forwarded to plaintiff — without request from her — policies of workmen's compensation insurance. From 8 November 1956 through 8 November 1958, defendant furnished plaintiff policies issued by Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company (P. T. & F.). Defendant's agency contract with P. T. & F. terminated in July 1958, and he was unable to renew plaintiff's coverage with this company. He failed to notify plaintiff of this development or of his subsequent unsuccessful efforts to procure a policy of insurance for her. Defendant never furnished plaintiff any policy, binder, or certificate of insurance covering her workmen's compensation liability after 8 November 1958. On 29 November 1958 one of plaintiff's employees was killed in an accident arising out of and in the course of his employment. Thereafter, plaintiff paid out $8,800 under an order of the North Carolina Industrial Commission for his death and incurred attorneys' fees in the sum of $500.00.

Defendant's evidence tends to show that he undertook to procure coverage for plaintiff from Royal Indemnity Company (Royal) in early October 1958 by sending it a duplicate of his office copy of the front page of the expiring P. T. & F. policy, across the top of which was written "Please issue this policy for us." A copy of this front page was introduced in evidence as defendant's Exhibit D. At the second trial of this case defendant contended that Exhibit D was a binder which provided plaintiff with coverage on 29 November 1958. However, as Lake, J., pointed out in the Court's opinion on the second appeal (270 N.C. 661, 667, 155 S.E. 2d 246, 251), this document "ex-

pressly provided for coverage from 8 November 1957 to 8 November 1958. Thus, by its terms, it would not constitute a binder in force at the time of the injury to the plaintiff's employee."

At the third trial (which we now review), defendant testified that "over the weekend" preceding that trial, he had made out in his own handwriting another document, which was introduced in evidence (over plaintiff's objection) as defendant's Exhibit E. He then asserted that when he mailed Exhibit D to Royal in October 1958 the original of Exhibit E was attached to it; that he had kept a copy of the material which was sent to Royal, but Exhibit E became detached from Exhibit D; that he knows, however, that Exhibit E is an exact copy of the paper which went to Royal.

Exhibit E, as prepared by defendant in 1968—almost ten years after the original was purportedly made—is a form for memoranda. It is undated. At the top defendant's letterhead is imprinted. Thereunder appears the following, the underlined words being handwritten:

Binder

Re:    Mrs. Bernadine Wiles T/A Centerview Taxi

      Policy No................ ........................................

To:    Royal Indemnity Co.

      Richmond, Va.

From:    Mullinax Insurance Agency

      The above mentioned policy expires 11/8/58

Please renew this policy for us. See...................below.

  ☐   1. Please record Dividend on Renewal.

  ☐   2. Dividend Subject to Audit.

  ☐   3. This is an Assigned Risk. Please Notify Assured and this Agency the Conditions You will Renew this Policy.

  ☒   4. Please send Extra Daily.

Defendant now contends that Exhibit D, together with Exhibit E (which was not in evidence at the second trial), is "in form and content" sufficient to constitute a binder which provided plaintiff with coverage on 29 November 1958 because no notice of cancellation was ever given plaintiff. *Moore v. Electric Co.*, 264 N.C. 667, 142 S.E. 2d 659. The Court accepts this contention and holds that (1) if defendant did

write and send Exhibit E attached to Exhibit D to Royal in October 1958 (as he testified he did), and (2) if defendant was then authorized to issue such a binder, he had provided plaintiff with coverage, and she cannot recover in this action. It also holds that defendant's Exhibit G, if issued and authorized, provided plaintiff with coverage by the Dixie Fire & Casualty Company (Dixie) and precludes her recovery. On this present appeal these conclusions must be considered as established by our decision in the second appeal. However, the majority opinion—upon the premise that the burden is upon plaintiff to show that defendant breached his contract by failing to provide her with insurance—puts the burden upon plaintiff to disprove defendant's assertion that he issued the "binders" or, if he did, to show that he lacked authority to bind the particular company. From this holding I dessent.

The issues submitted in the third trial do not isolate the determinative facts. Other issues will be required to bring into focus the defenses upon which defendant relies and to determine upon whom rests the burden of proof. I suggest the following:

1. Did defendant undertake to procure a policy of workmen's compensation insurance for plaintiff and to renew it annually as alleged in the complaint? (It is now stipulated that he did.)

2. For the period 8 November 1958-8 November 1959 did defendant fail to procure a renewal policy providing the coverage contained in the policies he had previously procured for her? (Defendant does not contend that he secured a policy of insurance for plaintiff or furnished her any document whatever.)

3. Did defendant secure for plaintiff a binder by which Royal Indemnity Company insured her workmen's compensation on 29 November 1958, as alleged in the answer?

4. Did defendant secure for plaintiff a binder by which Dixie insured her workmen's compensation liability on 29 November 1958, as alleged in the answer?

5. What amount of damages, if any, is plaintiff entitled to recover of defendants? (If liable, defendants offer to stipulate that plaintiff's damages are $9,300.00.)

Certainly, the burden of the first, second, and fifth issues is upon plaintiff. However, as this case has now developed, when it is shown that defendant never delivered to her any policy or certificate which provided her with insurance after 8 November 1958, plaintiff becomes entitled to a peremptory instruction on the second issue. In such case, unless defendant produces evidence that he had procured for her insur-

ance which was in effect on 29 November 1958, plaintiff is entitled to recover. In the trial below defendant introduced documents, Exhibits D, E, and G, which—he testified and contends—"bound" both Royal and Dixie on 29 November 1958 and constituted performance of his contract with plaintiff. If this contention be correct, suggested issues 3 and 4 must be answered YES. Before either can be so answered however, it must be shown (1) that defendant issued the respective "binder" and (2) that he had authority to do so.

In a situation such as this it seems that common sense, as embodied in two guides usually employed to fix the burden of proof, places the burden of issues 3 and 4 upon defendant. The first rule puts the burden of proof upon the party who asserts the affirmative of the issue. "Thus, the person alleging the agency must prove not only the fact of its existence, but also its nature and extent." 3 Am. Jur. 2d *Agency* § 348 (1962); accord, *Harvel's, Inc. v. Eggleston*, 268 N.C. 388, 150 S.E. 2d 786; 44 C.J.S. *Insurance* § 146 (1945). The second rule puts the burden upon the party having peculiar knowledge of the fact in issue and therefore the better means of proving it. Stansbury, N.C. Evidence (2d Ed.) § 208 (1963). Here other than what defendant has said, plaintiff knows nothing of defendant's transactions with either Royal or Dixie. Until after 29 November 1958, she never heard that defendant had purported to bind either in her behalf. He says that by sending Exhibits D and E to Royal and Exhibit G to Dixie, he bound each to cover her liability on that date. To this plaintiff can only answer: "I can't know what he did or didn't do, what Royal or Dixie had specifically authorized him to do, or what he was accustomed to do for either. However, what he says doesn't sound right to me!" To put the burden upon plaintiff to *disprove* defendant's asserted acts or his authority with respect to the binders in question is both unrealistic and violative of established rules of procedures.

Defendant admits that he failed to furnish plaintiffs a policy of insurance as he had agreed to do and as he was accustomed to do. If, as he contends, he provided her with coverage, it was not in the manner specified by his contract but by *temporary* insurance, a binder, which was an informal paper writing, meaningful to the trade but not to the uninitiated. Defendant concedes that he did not fulfill his contract according to its terms, but asserts that his breach was harmless to plaintiff because he had substituted a different form of coverage. He thereby interposes an affirmative defense which he must prove. The only facts in this case which are in dispute relate to defendant's defense. Plaintiff's right to recover, therefore, cannot be adjudicated upon the one issue, "Did the defendants fail to procure for the plaintiff workmen's compensation insurance coverage as they undertook to do?" As

thus phrased, the issue places upon plaintiff the burden of proving defendant's breach of contract—a breach which he is obliged to concede, but which he seeks to avoid by an alleged substitute performance.

I also dissent from the statement in the majority opinion that "The testimony of the individual defendant as to the extent of his authority, and that of the corporate defendant, so as to bind either or both of the two insurance companies was, of course, competent upon that question. . . ."

Over plaintiff's objection (or motion to strike), defendant was permitted to testify that (1) in order to keep plaintiff continuously insured, he "bound the Royal Indemnity Co."; (2) it was his intention to bind Royal when he filled out Exhibit D; (3) it was his "intention as agent of Dixie Fire & Casualty Co. to bind the risk of Workmen's Compensation coverage" for plaintiff when he filled out defendant's Exhibit G; (4) he had "bound" both Royal and Dixie; and (5) on 29 November 1958, her workmen's compensation liability was covered by both companies. These conclusions or opinions of the witness were clearly incompetent. Stansbury, Evidence (2d Ed.) § 130 (1963). What transactions defendant had with Royal and Dixie were questions of fact for the jury; the legal effect of those transactions was for the court—not defendant. This is just another application of the rule which prevents a witness from labeling another's conduct negligent or certain utterances a contract.

In *Cole v. City of Britton*, 63 S.D. 428, 260 N.W. 266 (1935), a witness was permitted to answer (over objection) the following question: "Did you receive authority from him (the mayor) to employ men to work in and about the city?" In granting a new trial, the court said: "It was competent for the witness to state the facts and circumstances concerning the transactions between him and the mayor, leaving to the court and jury under the facts disclosed whether or not he had the alleged authority; but it was error to permit the witness to state his conclusions." *Id.* at 430, 260 N.W. at 267.

The same rule which prevents a nonexpert witness from stating the legal effect of a transaction about which he has testfied also prevents him from testifying that he was the agent of a certain principal. "The facts being shown, then, whether the relation of principal and agent is created becomes a question of law for the court to declare, and not for the witness." *Parker v. Brown*, 131 N.C. 264, 265, 42 S.E. 605, 606; *accord, Young v. Newark Fire Ins. Co.*, 59 Conn. 41, 22 Atl. 32 (1890). The rule is well stated in *Chaplin v. Mutual Cash Guaranty Fire Ins. Co.*, 26 S.D. 632, 639-40, 129 N.W. 238, 240-41 (1910): "Where agency is the question directly involved in a case, the reputed agent as a wit-

ness may not give his opinion or state his conclusion as to such agency, but may state the facts and circumstances concerning the various transactions between him and the alleged principals, leaving the court and jury to determine under the facts disclosed, whether or not he was such agent. . . . Testimony that a party is or is not an agent is a mere conclusion of law. Likewise, testimony that an agent had authority to do a certain act is a conclusion of law." See Annot., 90 A.L.R. 749.

The problem posed here is lucidly amplified by Stansbury, Evidence (2d Ed.) § 130 (1963), wherein it is said that in attempting to relate facts a witness will often use words which, "though familiar to the layman's vocabulary, also have a legal meaning. Whether this usage will constitute a violation of the opinion rule depends upon the sense in which the words are used and the nature of the issues in the case." Thus a witness may state he was in "possession" of property, that he had "bought" an article, or that he did not "owe" a debt "if the words are employed in a popular sense to describe the facts rather than the legal consequences. But where the legal relations growing out of the physical facts are a disputed issue in the case, and the witness's language appears to describe the relations themselves, the same words may be objectionable. Under these circumstances it is improper for a witness to testify . . . whether he was an 'agent'. . . . He may not testify to the legal effect of a contract or to its meaning when that is a question for the court to decide from the writing itself. . . ."

The statement is often made that, as against the principal, agency cannot be proved by the out-of-court declarations of the alleged agent, but the agent may testify under oath as to the agency. *Sealey v. Insurance Co.*, 253 N.C. 774, 117 S.E. 2d 744. This does not mean, however, that a witness may, over objection, state bluntly, "I was an agent authorized to contract in behalf of my principal." It merely means that he is a competent witness to testify as to the facts and circumstances upon which he contends the court should rule that he was an agent clothed with certain authority. The rule which renders an agent a competent witness to prove his agency does not abrogate the rule that the legal effect of a transaction is for the court.

"The mere opinion of an agent as to the extent of his powers, or his mere assumption of authority without foundation, will not bind the principal. . . ." 3 Am. Jur. 2d *Agency* § 78 (1962). In this connection we note that defendant's Exhibit G, the document which defendant asserts "bound" Dixie, was dated 14 November 1958—approximately ten days after Royal had declined to provide plaintiff with coverage. Exhibit G is a form of the American Casualty Company upon which the name "Dixie Fire and Casualty Company" was written at the top. Dixie's own form for an "application for workmen's compensation in-

surance," Exhibit 13, specifically instructs the agent not to bind risk if any other insurance company has refused to write a new policy in the past two years. Defendant's written "agency agreement" with Dixie, defendant's Exhibit K, discloses no authority for him to issue binders for workmen's compensation insurance.

To minimize the risk of a fifth trial of this case, I call attention to another error in the admission of evidence in the third trial. Exhibits D and E, which were admitted over plaintiff's objection, are neither original nor duplicate original documents. Indeed, Exhibit E is not a *copy* of any document. Instead, it is a product of defendant's recollection, a professed *reproduction* of a *lost copy* reconstructed approximately ten years after the original document was purportedly written. "A party who seeks to prove the contents of a writing by a copy or oral testimony must first account satisfactorily for his failure to produce the *original*." *Randle v. Grady,* 228 N.C. 159, 163, 45 S.E. 2d 35, 39. (Italics mine.) If the original writing is in existence but unobtainable, secondary evidence of the contents may be admitted upon proof, satisfactory to the trial judge (1) that the offering party had made diligent effort to obtain the original and (2) that its production is impossible or impracticable. Stansbury, Evidence (2d Ed.) §§ 192, 194 (1963).

The originals of Exhibits D and E and Exhibit G would presumably be in the files of Royal and Dixie. On 3 November 1958, in a letter written on stationery from its Richmond office (defendant's Exhibit F) with reference to "Workmen's Compensation coverage Mrs. Bernadine Wiles d/b/a Centerview Taxi, Front St., Kannapolis, N. C.," Royal thanked defendant "for the captioned *submission*" and declined to provide coverage. (Italics mine.) On 18 November 1958, from Greer, South Carolina, Dixie advised defendant that plaintiff's risk "will not be acceptable to the company." It is noted that both of these letters speak in terms of an application for prospective coverage. Whether defendant's "submission" to Royal was a binder or an application for insurance is one of the two crucial questions in this case. *See* 43 Am. Jur. 2d *Insurance* § 216 (1969).

So far as the evidence discloses defendant made no attempt to secure the originals of Exhibits D, E, and G. He, therefore, laid no foundation for the introduction of secondary evidence of their contents. In *Greene v. Grocery Co.,* 159 N.C. 119, 74 S.E. 813, defendant offered secondary evidence of a telegram, "a material part of the contract, directly involved in the issue." In sustaining the trial judge's rejection of this evidence, Hoke, J., pointed out that the operation of the "best evidence" rule "is not necessarily affected by the fact that the proper custody of the written paper is no longer within the jurisdiction of the court." It is still necessary to show its unavailability. *Id.* at 120-21, 74 S.E. at 813.

*See Avery v. Stewart*, 134 N.C. 287, 46 S.E. 519, for a discussion by Walker, J., of when the production of the original writing is excused. *See* Stansbury, Evidence (2d Ed.) § 194 (1963); McCormick on Evidence § 207 (1954); 4 Wigmore (3d Ed.) §§ 1264-1268 (1940), for a discussion of ways of evidencing a document not produced.

Except as indicated I concur in the majority opinion.

BOBBITT, J., joins in this opinion.