ELMORE, Judge, dissenting.
*633 It is a fundamental principle of bankruptcy law that a debtor-in-possession who assumes an executory contract "assumes the contract cum onere ," NLRB v. Bildisco & Bildisco , 465 U.S. 513, 531-32, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482, 499 (1984) (citation omitted), in its entirety "without any diminution in its obligations or impairment of the rights of the lessor in the present or the future," In re Texaco Inc. , 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000) (footnote omitted). Because the language of the Lease and Guaranty reflects a clear intention of the parties to treat the instruments as component parts of a single executory contract, which had to be assumed in its entirety during the 2008-2009 Bankruptcy, I respectfully dissent.
As the majority properly notes, North Carolina contract law controls the interpretation of the Lease.[1] Our rules of construction require "the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Philip Morris USA Inc. (Philip Morris I ) , 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005) (citation omitted). The "intent" of the parties "is derived not from a particular contractual term but from the contract as a whole." Id. (citation omitted). The contract must be considered in its entirety without placing undue emphasis on "what the separate parts mean." Jones v. Casstevens , 222 N.C. 411, 413-14, 23 S.E.2d 303, 305 (1942) ; see also Peirson v. Am. Hardware Mut. Ins. Co. , 249 N.C. 580, 583, 107 S.E.2d 137, 139 (1959) ("The object of interpretation should not be to find discord in differing clauses, but to harmonize all clauses if possible." (citations omitted)).
If the language of the contract is "plain and unambiguous, there is no room for construction. The contract is to be interpreted as written," Jones , 222 N.C. at 413, 23 S.E.2d at 305 (citations omitted), and "enforce[d] ... as the parties have made it," Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co. , 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) (citations omitted). Ambiguity exists "only when, 'in the opinion of the court, the language *243 of the [contract] is fairly and reasonably susceptible to either of the constructions for which the parties contend.' " State v. Philip Morris USA Inc. (Philip Morris II ) , 363 N.C. 623, 641, 685 S.E.2d 85, 96 (2009) (quoting Wachovia Bank & Trust Co. , 276 N.C. at 354, 172 S.E.2d at 522 ); see also *634 Walton v. City of Raleigh , 342 N.C. 879, 881-82, 467 S.E.2d 410, 412 (1996) ("Parties can differ as to the interpretation of language without its being ambiguous....").
To determine the agreement undertaken, "[a]ll contemporaneously executed written instruments between the parties, relating to the subject matter of the contract, are to be construed together." Yates v. Brown , 275 N.C. 634, 640, 170 S.E.2d 477, 482 (1969) (citations omitted); see also Wiles v. Mullinax , 275 N.C. 473, 480, 168 S.E.2d 366, 371 (1969) ("Two sheets, attached together as parts of a single communication, must of course, be construed as one document." (citations omitted)); Carolina Place Joint Venture v. Flamers Charburgers, Inc. , 145 N.C. App. 696, 699, 551 S.E.2d 569, 571 (2001) (concluding that franchise agreement and guarantee, which was signed as inducement, "were merged into one document, the [f]ranchise [a]greement"). Where a document incorporates another by reference, the latter is construed as part of the former "as if it were set out at length therein." Booker v. Everhart , 294 N.C. 146, 152, 240 S.E.2d 360, 363 (1978) (citation omitted). In other words, if "several instruments" are "executed contemporaneously" and "pertain to the same transaction," they "are to be considered as component parts of the understanding between the parties" such that "the whole contract stands or falls together." Pure Oil Co. of the Carolinas v. Baars , 224 N.C. 612, 615, 31 S.E.2d 854, 856 (1944) (citations omitted).
If the contract is clear and unambiguous, there is no genuine issue of material fact; rather, construction is a matter of law for the court. Carolina Place Joint Venture , 145 N.C. App. at 699, 551 S.E.2d at 571 (citation omitted); see also Asheville Mall, Inc. v. F.W. Woolworth Co. , 76 N.C. App. 130, 132, 331 S.E.2d 772, 773-74 (1985) ("When the language of the contract is clear and unambiguous, ... the court cannot look beyond the terms of the contract to determine the intentions of the parties." (citations omitted)). If the contract is ambiguous, however, its interpretation "is a matter for the jury." Dockery v. Quality Plastic Custom Molding, Inc. , 144 N.C. App. 419, 422, 547 S.E.2d 850, 852 (2001) ; see also Whirlpool Corp. v. Dailey Constr., Inc. , 110 N.C. App. 468, 471, 429 S.E.2d 748, 751 (1993) ("[I]f the terms of the contract are ambiguous then resort to extrinsic evidence is necessary and the question is one for the jury." (citation omitted)).
Applying the foregoing principles, I believe the parties expressed a clear intent to treat the Lease and Guaranty as a single contract. Bally Holding executed the Guaranty contemporaneously with, if not prior to, the Lease as an "inducement" to the lessor. The Guaranty, attached as Exhibit C to the Lease, is explicitly referenced in the recitals: "WHEREAS, the performance of the obligations of Tenant under *635 this Lease is to be guaranteed by BALLY TOTAL FITNESS HOLDING CORPORATION ... pursuant to a Guaranty in the form of Exhibit C attached hereto." The Guaranty, likewise, references the Lease and the liability of Bally Holding thereunder: "Whatever reference is made to the liability of Tenant with the Lease, such reference shall be deemed likewise to refer to the Guarantor." In addition to the cross-references contained in the documents, the Lease expressly incorporates the Guaranty. Article 1.1 provides: "[T]he recitals, as well as the exhibits attached to this Lease, are hereby incorporated into this Lease in their entirety."
Because the record plainly reveals that the Lease and Guaranty constitute a single contract, ratified by the First and Second Amendments to Lease, the Guaranty had to be assumed by the terms of the Assumption Order in the 2008-2009 Bankruptcy. Bally Holding could not sever the Lease, electing to avoid its obligations on the Guaranty while leaving the more favorable provisions intact. Such a construction runs counter to the expressed intent of the parties and impairs the rights of plaintiff to secure performance of the Lease obligations from Bally Holding. Our treatment of guaranty agreements should not be so rigid to preclude parties *244 from drafting toward more suitable arrangements.
Contrary to the trial court's conclusion, the language assented to by the parties provides a clear indication that the Guaranty was "required to be maintained" with the assumption of the Lease. Bally Holding remains liable on the Guaranty, which was a component part of the Lease assumed in the 2008-2009 Bankruptcy. I would reverse the trial court's order and remand for entry of summary judgment in favor of plaintiff on its breach of contract claim against Bally Holding raised in the original complaint and in the first cause of action of the first amended complaint.

The choice-of-law provision in the Lease provides: "This Lease shall be governed by, and construed in accordance with, the laws of the State in which the Premises are located."