NORTHERN NATIONAL LIFE INSURANCE COMPANY v. LACY J. MILLER MACHINE COMPANY, INC.

No. 422A83

(Filed 5 June 1984)

1. **Insurance § 19.1— solicitation of life insurance—agent of insurer**

   The trial court properly denied plaintiff-insurance company's motions for directed verdict and judgment notwithstanding the verdict in an action in which plaintiff sought a declaratory judgment enabling it to cancel a $100,000 life insurance policy issued to the defendant where the evidence tended to show that an insurance agent looked for companies which had "key man" life insurance policies; that the agent found that plaintiff-insurance company did not require physical exams for their "key man" insurance policies; that the insurance agent prepared a "key man" policy for the former president of defendant company with knowledge that the former president did not meet the requirement of active fulltime employment at the time the insurance agent filled out the insurance application; that the insurance agent delivered the application to plaintiff insurance company signed as "Licensed Registered Agent"; that the agent collected the premiums for plaintiff-insurance company and sent them to plaintiff's general agent; that after plaintiff approved the application, it licensed the insurance agent as its agent and paid him a commission. From this evidence the court could have found that the insurance agent

"solicited" the application for insurance with plaintiff-insurance company and that the insurance agent was an agent of the plaintiff-insurance company. G.S. 58-197. Further, although G.S. 50-40.3 states that a broker *as such* is not the agent of an insurance company, and the insurance agent in this case was referred to as an "insurance broker," a broker or other person who "solicits an application for insurance upon the life of another" is an agent of the insurance company by the express terms of G.S. 58-197. G.S. 58-39.4(b).

**2. Insurance § 19.1— agent's knowledge of falsity of statements in life insurance policy application—evidence supporting conclusions**

In an action in which plaintiff-insurance company sought to cancel a $100,000 life insurance policy issued to the defendant on the basis of false statements in the application, the evidence supported the conclusion that the insurance company's agent had knowledge of the falsity of the statements in the application when they were made where the evidence tended to show that the agent completed the application by himself without properly soliciting information from the defendant and where there was evidence from which the jury could have inferred that the agent was put on actual notice that the insured person did not work fulltime as stated in the application.

**3. Appeal and Error § 20— denial of petition for discretionary review—no approval of Court of Appeals' decision**

A denial of a petition for discretionary review does not constitute approval of the decision of the Court of Appeals. Further, the Supreme Court is not bound by precedents established by the Court of Appeals.

**4. Appeal and Error § 69— stare decisis not applying to Court of Appeals' decision**

The procedural issues in the present case are substantially different from those in a similar case reaching a different result in the Court of Appeals, and the doctrine of *stare decisis* did not compel a different decision by the Court of Appeals than that which it reached.

Justice MARTIN dissenting.

Justice MEYER joins in this dissenting opinion.

Justice MEYER dissenting.

Justices EXUM and MARTIN join in this dissenting opinion.

APPEAL by the plaintiff pursuant to G.S. 7A-30(2) from the decision of a divided panel of the Court of Appeals, 63 N.C. App. 424, 305 S.E. 2d 568 (1983), which found no error in the judgment entered by *Washington, Judge,* in Superior Court, DAVIDSON County on March 19, 1982.

In an action seeking a declaratory judgment, the plaintiff, Northern National Life Insurance Company, sought to cancel a $100,000 life insurance policy issued to the defendant, Lacy J.

Miller Machine Company. The jury found for the defendant. The Court of Appeals found no error. One judge having dissented in the Court of Appeals, the plaintiff appealed to the Supreme Court as a matter of right under G.S. 7A-30(2). Heard in the Supreme Court November 10, 1983.

*Smith, Patterson, Follin, Curtis, James and Harkavy, by Norman B. Smith and John A. Dusenbury, Jr.; John T. Manning; and Cansler & Lockhart, by Thomas Ashe Lockhart, for plaintiff appellant.*

*House, Blanco & Osborn, P.A., by Lawrence U. McGee and John S. Harrison; and Wilson, Biesecker, Tripp & Sink, by Joe E. Biesecker, for defendant appellee.*

MITCHELL, Justice.

Northern National Life Insurance Company (hereinafter "Northern"), the plaintiff-appellant, contends in this appeal that the majority in the Court of Appeals erred in upholding the trial court's refusal to grant the plaintiff's motion for a directed verdict and judgment notwithstanding the verdict. Since we find that the trial court was correct in submitting this case to the jury, we affirm the decision of the Court of Appeals.

The Lacy J. Miller Machine Company (hereinafter "Miller Company") is a North Carolina corporation in which the decedent, Lacy J. Miller, was a majority shareholder. Miller also served on the board of directors and as president of the company. Miller was removed from office on January 28, 1980 by the board of directors. James T. Donley and Joseph Buie were members of the board of directors and minority shareholders in the corporation. Until the removal of Miller on January 28, 1980, they served as vice president and secretary-treasurer respectively.

At trial the evidence tended to show that Roger C. Brooks was an insurance agent affiliated with Equitable Life Insurance Company (hereinafter "Equitable"). When Brooks visited the Miller Company corporate offices early in 1979, Buie and Donley informed him that the company was interested in purchasing insurance on the life of Lacy J. Miller. Brooks learned from Buie and Donley that the company had a mandatory stock purchase plan whereby the company agreed to purchase shares of stock

held by officers of the company in the event of those officers' deaths. Brooks attempted to procure life insurance coverage for the Miller Company from Equitable on the life of Miller, but Equitable refused to issue such coverage because Miller suffered from a heart condition. Brooks testified that he continued to look for an insurance program to fund the Miller Company's stock purchase plan.

Brooks stated that in September 1979 he placed a group hospitalization insurance policy with Equitable for the Miller Company, and that after September he visited the corporate headquarters of the company on an average of once a month. Brooks stated that late in 1979 he learned of policies offered by Northern and by Manhattan Life Insurance Company. Brooks believed that the policies might suit the Miller Company's needs. He learned that both insurance companies offered "key man" policies to employers on the lives of important employees without requiring physical examinations for the insured employees. Brooks learned about the policies from Barney Haynes, General Agent for Manhattan and for Northern.

Brooks spoke to Buie and Donley about the Manhattan and Northern policies in January 1980. Brooks stated that Buie and Donley were "skeptical" about the likelihood that insurance could be issued on the life of Miller because of his heart condition. Brooks told Buie and Donley that the requirements under Northern's policy were that the employer pay all premiums, that the insured not be known to be terminally ill at the time of the application or issuance of the policy, that the insured be actively involved in the fulltime pursuit of the duties of his employment, and that the insured be an employee of the employer. Brooks said he told Buie and Donley they should submit applications to Northern.

Brooks testified that he personally had questions about Miller's eligibility for the policies because he knew from previous experience that Miller had had a heart attack and a drinking problem. Brooks stated, however, that with regard to Miller, the requirement of active fulltime employment concerned him more than any other requirement. He stated that he knew that Miller was not in his office on a forty hour a week basis but that he thought Miller was president of the company and active in deci-

sion making. Brooks told Haynes about Miller's irregular schedule, and Haynes said that as long as Miller had a decision making role in the firm he would qualify under the plan.

Brooks testified that in late January or early February 1980 he received blank applications for the policy from Northern. He delivered a Northern application to Don R. House, attorney for the Miller Company, and he explained to House the requirements for eligibility for the policy. When that application was returned to Brooks, it was blank except for Lacy J. Miller's signature. Brooks testified that he received at the same time nine other applications from the Miller Company for Northern's "key man" life insurance. The applications other than the one seeking insurance on Miller's life were signed by Buie or by Donley on behalf of the corporation. The application for insurance on Miller's life was signed only by Miller. Brooks stated that on February 5, 1980 he filled out the remainder of the application for insurance on the life of Miller, using as his source of information his own knowledge about Miller and his experience in trying to place another policy for the Miller Company in September 1979. Brooks stated that he had also obtained information from Northern's files and from the conversations he had with Buie and Donley in late December 1979 and early to mid-January 1980. The application completed by Brooks included the statements that Lacy J. Miller was currently an active and fulltime employee of the Miller Company and that his position was that of president with office and public relations duties. Brooks signed the application as "Licensed Resident Agent." The completed application bore his signature and that of Lacy J. Miller, but no others.

The information on the application was inaccurate as of February 5, 1980, the day it was completed by Brooks. The application failed to disclose that on January 22, 1980 a temporary restraining order had been issued at the request of Buie, Donley and the Miller Company enjoining Miller from "taking or attempting to take any action whatsoever with regard to the assets, funds, obligations, rights, [or] employees of the corporation." The order was issued pursuant to a lawsuit filed January 21, 1980 in Davidson County in which the plaintiffs, Buie, Donley, and the Miller Company, sought to enjoin Lacy Miller from further involvement with the corporation. In affidavits in support of the restraining order, Donley and Buie stated that Miller had been in-

active in the business since 1975, and that he had neglected his corporate duties and responsibilities. On January 28, 1980, Miller was removed as president and replaced by Donley in a meeting of the Miller Company's Board of Directors.

After completing the application for the Northern policy on the life of Miller, Brooks submitted that application and the nine others to Barney Haynes. He stated that he did not know when he completed the application that Miller had been removed as president of the corporation, that a restraining order had been issued or that Buie and Donley had filed affidavits.

Northern received applications for the policy insuring the lives of Miller and nine other employees of the corporation on February 19, 1980. Terry L. Anderson, Chief Underwriter for Northern, stated in a deposition which was read to the jury that the applications were reviewed and approved by Northern. Before issuing the policy, however, Northern licensed Brooks as its agent. The policies were then typed and mailed to Haynes by Northern with a request for an additional premium. On April 4, 1980 the additional premium was received and found sufficient. On April 17, 1980 the insurance was considered issued by Northern, according to the testimony of Anderson. The policy was backdated to February 5, 1980, the date of application. Lacy J. Miller died May 13, 1980.

Northern brought this declaratory judgment action seeking a cancellation of the policy because of the false statements in the application. Northern sought to show that Brooks was an agent of the Miller Company and not an agent of Northern and that whatever knowledge Brooks had of the falsity of the statements was to be imputed to the Miller Company. At the close of all the evidence at trial, both Northern and the Miller Company made motions for directed verdict which the trial court denied. The following were the stipulated issues submitted to the jury and the jury's verdicts.

1. Was Roger C. Brooks the agent of Lacy J. Miller Machine Co., Inc., in obtaining the insurance policy on the life of Lacy J. Miller?

ANSWER: No

2. Was there a false statement of a material fact in the application for insurance on the life of Lacy J. Miller?

ANSWER: YES

3. Was Roger C. Brooks the agent of Northern National Life Insurance Company in obtaining the insurance policy on the life of Lacy J. Miller?

ANSWER: YES

4. As such, did Roger C. Brooks know or have reason to know of a false statement of a material fact in the application of the insurance on the life of Lacy J. Miller?

ANSWER: YES

5. Was a false statement of material fact inserted in the application by Roger C. Brooks without the actual or implied knowledge of the Lacy J. Miller Machine Co.?

ANSWER: YES

Northern moved for a judgment notwithstanding the verdict and the motion was denied. From the jury verdict and judgment awarding the Miller Company the full amount of coverage on the policy, Northern appealed.

The Court of Appeals held that there was no error in the trial court. One judge dissented on the ground that the disposition of a related case, *Manhattan Life Insurance Company v. Lacy J. Miller Co.*, 60 N.C. App. 155, 298 S.E. 2d 190 (1982), *disc. review denied*, 307 N.C. 697, 301 S.E. 2d 389 (1983), governed this case and that a directed verdict for Northern should therefore have been granted. We affirm the holding of the majority in the Court of Appeals.

I.

[1] The plaintiff-appellant Northern contends the Court of Appeals erred in holding that the trial court properly denied Northern's motions for directed verdict and judgment notwithstanding the verdict. Northern contends there was insufficient evidence that Brooks "solicited" the Miller Company for insurance business in any manner sufficient to make him Northern's agent. Northern further argues that, even if Brooks was its agent, there was insuf-

ficient evidence to show that he had any knowledge of the falsity of any statements in the application for the policy on the life of Miller. Northern finally contends the Court of Appeals erred by failing to follow precedent it had established in *Manhattan*. After considering each argument, we affirm the Court of Appeals.

We begin by reviewing familiar principles governing motions for directed verdict and motions for judgment notwithstanding the verdict. A motion for directed verdict under Rule 50 of the North Carolina Rules of Civil Procedure tests the legal sufficiency of the evidence, considered in the light most favorable to the non-movant, to take the case to the jury. *Kelly v. International Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). It is only when the evidence is insufficient to support a verdict in the non-movant's favor that the motion for directed verdict should be granted. *Snow v. Duke Power Company*, 297 N.C. 591, 256 S.E. 2d 227 (1979). A verdict may never be directed when there is conflicting evidence on contested issues of fact. *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971).

A motion for judgment notwithstanding the verdict is technically a renewal of a motion for a directed verdict. It is a motion that judgment be entered in accordance with the movant's earlier motion for directed verdict, notwithstanding the contrary verdict actually rendered by the jury. *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). The test for determining the sufficiency of the evidence when ruling on a motion for judgment notwithstanding the verdict is the same as that applied when ruling on a motion for directed verdict. *Id.*

It is proper to direct a verdict for a moving party with the burden of proof only if the credibility of the movant's evidence is manifest as a matter of law. *North Carolina National Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979). In *Burnette* this Court recognized that, although it is futile to state a general rule for use in the determination of manifest credibility, recurring situations where credibility is manifest include:

(1) Where the nonmovant establishes proponent's case by admitting the truth of the basic facts upon which the claim of proponent rests.

(2) Where the controlling evidence is documentary and nonmovant does not deny the authenticity or the correctness of the documents.

(3) Where there are only latent doubts as to the credibility of oral testimony and the opposing party has "failed to point to specific areas of impeachment and contradictions."

297 N.C. at 537-38, 256 S.E. 2d at 396 (citations omitted).

The movant in this case was the plaintiff Northern, the party with the burden of proof. Northern contends that, since the determination whether Brooks was agent for the Miller Company or for Northern is the crucial issue in this case, Northern was entitled to a directed verdict because the record is devoid of any evidence to impeach Brooks or contradict his assertions that he acted as agent for the Miller Company. Northern points to the third situation in which credibility may be manifest and argues that there was at best only latent doubt as to Brooks' agency with the Miller Company. We do not agree.

Since we find that there was substantial evidence that Brooks solicited the insurance business of the Miller Company and was therefore the agent of the insurance company under G.S. 58-197, we do not find Brooks' declarations that he was agent for the Miller Company controlling on the question of agency. Although testimony by an insurance agent as to his authority to bind an insurance company is competent on that question, it is not conclusive. *Wiles v. Mullinax*, 275 N.C. 473, 168 S.E. 2d 366 (1969). We are not persuaded that this case presents the kind of situation in which credibility is manifest and in which a verdict should be directed in favor of the party with the burden of proof.

Even without reliance on principles which advise against directing verdicts for parties with the burden of proof, we find the trial court properly refused to grant a directed verdict or judgment notwithstanding the verdict for Northern. Northern seeks to avoid liability on the policy on Miller's life because of the false material representations in the application. Both parties acknowledge that the dispositive question in this appeal is whether the misrepresentations in the application should be attributed to Northern or to the Miller Company. An insurance

company is not bound by a contract for insurance where the insured makes representations that are false and material. *Tolbert v. Mutual Benefit Life Insurance Co.*, 236 N.C. 416, 72 S.E. 2d 915 (1952). But it is well established that an insurance company cannot avoid liability on a policy on the basis of facts known to it at the time the policy went into effect. *Cox v. Equitable life Assurance Society*, 209 N.C. 778, 185 S.E. 12 (1936); *Willetts v. Integon Insurance Corp.*, 45 N.C. App. 424, 263 S.E. 2d 300, *disc. review denied*, 300 N.C. 562, 270 S.E. 2d 116 (1980). Furthermore, the knowledge of its agent is imputed to the insurer, absent collusion and fraud. *Cox v. Equitable Life Assurance Society*, 209 N.C. 778, 185 S.E. 12 (1936).

Since it is undisputed in this case that Brooks completed the blank application over Miller's signature, the dispositive question is whether Brooks was the agent for the Miller Company or for Northern. G.S. 58-197 provides that:

A person who solicits an application for insurance upon the life of another, in any controversy relating thereto between the insured or his beneficiary and the company issuing a policy upon such application, is the agent of the company and not of the insured.

The plaintiff argues that the Court of Appeals erred when it held that the evidence that Brooks "solicited" the Miller Company's application and was therefore agent of the insurance company was sufficient to take to the jury. We do not agree.

We note that a majority of states have a statute similar to G.S. 58-197. *See* R. Anderson, 3 Couch on Insurance 2d, § 26:15 (1960). Many of those statutes were enacted in the early part of this century to curb abusive practices on the part of insurance companies which would issue policies but avoid paying benefits provided under the terms of the policies by finding technical defects in agents' authority to bind the companies. *See, e.g. Paulson v. Western Life Insurance Co.*, 292 Or. 38, 636 P. 2d 935 (1981) (analyzing the history and purpose of an almost identical statute).

Other jurisdictions have interpreted the term "solicit" in solicitation statutes in a variety of ways, generally finding solicitation where a person holds himself or herself out as an in-

surance agent, inviting or receiving insurance business, delivering policies and receipts, or where a person procures an application for insurance upon which an insurer issues a policy. R. Anderson, 3 Couch on Insurance 2d, § 26:17 (1960). As the Court of Appeals majority pointed out, the term "solicit" is defined neither by statute nor by case law in this State. The Court of Appeals appropriately determined that "solicit" must therefore be interpreted to further the intent of the legislature and, absent a special definition, that the term must be given its ordinary meaning. Because there was sufficient evidence that Brooks "solicited," using the ordinary meaning of the term, we find it unnecessary to reach a precise definition of solicitation as it is used in G.S. 58-197.

Northern argues that the evidence precluded any reasonable inference that Brooks solicited the Miller Company within the meaning of the statute. Northern points out that Brooks was not licensed with Northern, had never done any business with Northern and in fact had never heard of it until he sought key man life insurance policies for the Miller Company. Also, Brooks testified that he acted "per se" as an agent for the Miller Company in trying to service the company as one of his better clients. We find the plaintiff's argument unpersuasive.

In deciding that there was sufficient evidence of solicitation on the part of Brooks to take the case to the jury, we note that he regularly called upon the Miller Company on an average of once per month. He acknowledged that he first learned of the Miller Company's need for key man policies when he visited the headquarters in March 1979. Brooks tried to find a suitable policy and when he learned of the Northern plan he approached Buie and Donley, corporate officers of the Miller Company, and told them about that plan. He obtained more information and sought and received blank applications for insurance policies with Northern from Northern's General Agent Barney Haynes. Brooks delivered the applications, completed one for insurance on Miller and others, and signed the one for insurance on Miller as "Licensed Registered Agent." Brooks also collected the premiums for Northern and sent them to Haynes. After Northern approved the applications, it licensed Brooks as its agent and paid him a commission. Brooks testified that the Miller Company never paid him a commission.

Using the ordinary meaning of the term "solicit" we find that where, as here, there is evidence that a person actively participated in the placement of a life insurance policy by approaching corporate officers with information about the policy, obtaining and completing blank applications for the policy, collecting premiums, distributing policies, and collecting a commission, there is ample evidence that the person has "solicited" an application for insurance upon the life of another within the meaning of G.S. 58-197. We find that the evidence was sufficient in this case to submit to the jury the question whether Brooks was the agent of Northern.

Although the point has not been raised on appeal, we note that throughout the briefs and records of this case, Brooks is referred as as an "insurance broker." A broker is statutorily defined by G.S. 58-39.4(b) as follows:

> An insurance broker is hereby defined to be an individual who being a licensed agent, procures insurance through a duly authorized agent of an insurer for which the broker is not authorized to act as agent.

The authority of a broker is defined by G.S. 58-40.3(a) as follows:

> A broker, as such, is not an agent or other representative of an insurer, and does not have the power, by his own act, to bind an insurer for which he is not agent upon any risk or with reference to any insurance contract.

There is some authority in this State that a broker is the agent for an insured rather than for the insurance company. *See, e.g., Collins v. Quincy Mutual Fire Insurance Co.*, 39 N.C. App. 38, 249 S.E. 2d 461 (1978), *aff'd*, 297 N.C. 680, 256 S.E. 2d 718 (1979); *Williams v. Canal Insurance Company*, 21 N.C. App. 658, 205 S.E. 2d 331 (1974). In *Collins* this Court implied in *dicta* that a broker is an agent of the insured and not the insurer when we stated that the question presented in that case would not have arisen

> had the broker, through whom plaintiff sought insurance, been an agent of defendant. In such case, the agent's knowledge that plaintiff was acting on behalf of himself *and* his co-tenants would have been imputed to the [defendant] insurer. . . .

297 N.C. at 686, 256 S.E. 2d at 721 (emphasis original).

The view of a broker's authority found in G.S. 58-40.3 and in the *Collins* dicta does not conflict with our interpretation of the solicitation statute, G.S. 58-197. Although G.S. 58-40.3 states that a broker *as such* is not the agent of an insurance company, a broker or other person who "solicits an application for insurance upon the life of another" is an agent of the insurance company by the express terms of G.S. 58-197. Likewise, although this Court in *Collins* stated that the broker was not the agent of the insurer, *Collins* does not stand for the proposition that a broker *may not* be an agent of an insurer. Where a broker "solicits" within the meaning of G.S. 58-197, he is deemed an agent of the insurer in situations covered by that statute. The evidence in this case was sufficient to permit the jury to find that Brooks was Northern's agent even if he was a broker.

II.

[2] The plaintiff Northern next contends that the evidence did not support the conclusion that Brooks had any knowledge of the falsity of the statements in the application. Northern argues that the Court of Appeals' failure to reverse the trial court was therefore error. Northern acknowledges that Brooks stated that he knew Miller had had a heart attack in 1977 and was often absent from work. It is Northern's contention, however, that Brooks did not know that Miller had been removed from office or that Buie and Donley had sworn in affidavits that Miller was inactive. Brooks stated that he received some of the information he placed on the application from Buie and Donley. Northern argues that those officers of the Miller Company acted in bad faith in failing to tell Brooks the true facts.

Whether answers on an application for insurance are attributable to the agent of the insurer or to the insured must be resolved by the factfinder. *Chavis v. Home Security Life Insurance Co.*, 251 N.C. 849, 112 S.E. 2d 574 (1960). Furthermore, where incorrect answers are inserted by an agent of the insurer without the knowledge of the applicant the answers will not vitiate the policy absent fraud or collusion on the part of the applicant. *Heilig v. Home Security Life Insurance Co.*, 222 N.C. 231, 22 S.E. 2d 429 (1942); *see also Mathis v. Minnesota Mutual Life Insurance Co.*, 302 F. Supp. 998 (M.D.N.C. 1969) (interpreting North Carolina law).

In the case before us, Brooks stated that he completed the application for insurance on the life of Miller using information he had obtained from personal knowledge he had gained when dealing with the Miller Company in September of 1979. He also obtained information from Northern files and from Buie and Donley. Brooks testified that although he was not sure about when he confirmed from Buie and Donley that Miller was president of the corporation, he thought it was in mid-January during the investigational stages of placing the policy. Miller was removed from office on January 28, 1980. Brooks testified that he did not remember asking questions related to Miller's employment status at the time he completed the application. We believe there was sufficient evidence that Brooks completed the application without properly soliciting information from the Miller Company to submit to the jury the question whether the misrepresentations were attributable to Brooks or to the Miller Company.

Additionally, evidence was introduced from which the jury could have inferred that Brooks was put on actual notice that Miller did not work fulltime. The knowledge of an agent is imputed to the insurer when the agent acts within the scope of his authority and in the absence of fraud or collusion. *Cox v. Equitable Life Assurance Society*, 209 N.C. 778, 185 S.E. 12 (1936). Knowledge of facts which the insurer has or should have had constitutes notice of whatever an inquiry into such facts would have disclosed and is binding on the insurer. Whatever puts a person on inquiry amounts in law to "notice" of such facts as an inquiry pursued with reasonable diligence and understanding would have disclosed. *Gouldin v. Inter-Ocean Insurance Co.*, 248 N.C. 161, 102 S.E. 2d 846 (1958).

The facts of this case disclose that Brooks was aware that Miller was rarely in his office. Brooks testified that the Equitable Life Insurance Company for whom he was an agent had waived its "actively at work" requirement for Miller on one of its policies issued for the Miller Company. As a result of Brooks' exposure to the Miller Company and Miller, Brooks made a specific inquiry of Northern's General Agent Haynes to find out precisely how "fulltime" was defined under Northern's fulltime work requirement. Brooks stated that that requirement was the one which troubled him most with regard to Miller. Furthermore, when the application on Miller's life came to Brooks, it was blank except for the

signature of Miller. The other applications were signed either by Buie or by Donley as corporate officers of the corporation. The only application bearing Miller's signature was the policy insuring Miller himself.

We conclude that, considering the facts in the light most favorable to the defendant, the jury could have found Brooks knew or had reason to know that Miller was not a fulltime employee. Since the evidence also would support a jury finding that Brooks' actions amounted to solicitation and that he was an agent for Northern, the jury properly could have imputed Brooks' actual or constructive knowledge to Northern.

### III.

The plaintiff Northern argues that *stare decisis* compelled the Court of Appeals to follow the precedent established by another panel of the Court of Appeals which upheld summary judgment for the insurance company in a related case, *Manhattan Life Insurance Company v. Lacy J. Miller Machine Company*, 60 N.C. App. 155, 298 S.E. 2d 190 (1982), *disc. rev. denied*, 307 N.C. 697, 301 S.E. 2d 389 (1983). We disagree.

[3] We note at the outset that the doctrine of *stare decisis* is not determinative on the appeal to this Court of the case at hand. It is fundamental that the highest court of a jurisdiction may overrule precedents established by decisions of intermediate appellate courts. 20 Am. Jur. 2d *Courts*, § 231 (1965). This Court is not bound by precedents established by the Court of Appeals. Although this Court denied a petition for discretionary review in *Manhattan*, we have often stated that such a denial does not constitute approval of the decision of the Court of Appeals. It may mean only that no harmful result is likely to arise from the Court of Appeals' opinion. *See Peaseley v. Virginia Iron, Coal and Coke Co.*, 282 N.C. 585, 194 S.E. 2d 133 (1973).

[4] Northern argues, however, that the panel of the Court of Appeals which decided this case was bound by *Manhattan*. In rejecting this argument, we find it suffices to say that the procedural issues in this case are substantially different from those in *Manhattan*, and that the doctrine of *stare decisis* did not compel a different decision by the Court of Appeals than that it reached.

Holding that the trial court correctly denied both the defendant's and the plaintiff's motions for directed verdict and judgment notwithstanding the verdict, we affirm the decision of the Court of Appeals for the reasons previously stated herein.

Affirmed.

Justice MARTIN dissenting.

Believing as I do that the Court of Appeals erred in holding that Brooks, as agent for plaintiff insurance company, solicited the application of insurance on the life of Miller pursuant to N.C.G.S. 58-197, I respectfully dissent.

Brooks did not seek out the Miller Company and present it with a plan for key man insurance. The uncontradicted evidence is that Buie and Donley, officers of the Miller Company, told Brooks that the company wanted additional life insurance on the life of Lacy Miller and asked Brooks to attempt to locate an insurance company who would issue the policy. The majority opinion agrees with this: "Buie and Donley informed him [Brooks] that the company was interested in purchasing insurance on the life of Lacy J. Miller."

Brooks thereafter tried to place the insurance with Equitable, but it refused to issue the policy because Miller suffered from a heart condition. Brooks continued to look for a company that could issue a policy to satisfy the needs of defendant. After Buie and Donley expressed an interest in obtaining a policy from plaintiff, Brooks then sought to establish some relationship with plaintiff.

The evidence shows that Buie and Donley, acting for the defendant, knew that the company had a problem with funding the stock purchase agreement. Lacy Miller was a poor insurance risk. He had a severe heart condition as well as problems with alcohol. He was no longer a "key man" with the company. He had been removed as president of the company and had even been enjoined by the court from taking any action with respect to the business. Buie and Donley were anxious to place this insurance and had Brooks working to do so on their behalf.

"Solicit" is not defined in the statute. Its ordinary meaning is to be applied. It means to approach with a request or a plea as in selling or begging. Webster's Third New International Dictionary 2169 (1971). There is no evidence that Brooks approached the defendant in an effort to sell it the policy or to persuade it to buy the policy. All the evidence is to the contrary—defendant requested Brooks to find a company that would issue a policy covering Miller. Brooks did not initiate the transaction; Buie and Donley did. The statute was not passed to protect consumers from their own activities.

Brooks was regularly servicing the insurance needs of defendant. He was not an insurance agent for plaintiff during the time in question. Brooks was an "insurance broker" and is so described in the record and briefs. It is unchallenged that a broker does not have the power to bind an insurer for which he is not an agent upon any risk or insurance contract. N.C. Gen. Stat. § 58-40.3(a) (1982). It was for this reason that plaintiff made Brooks its agent at the time the policy was issued. This statute covers exactly what Brooks was doing: procuring the policy from plaintiff for whom he was not an agent.

I find that the Court of Appeals erred in concluding that the evidence was sufficient to submit the issue to the jury as to whether Brooks solicited the application pursuant to N.C.G.S. 58-197. I vote to reverse.

Justice MEYER joins in this dissenting opinion.

Justice MEYER dissenting.

I join in the dissenting opinion of Justice Martin but wish to add the following:

Any impartial review of the record in this case leaves no doubt in the reader's mind that Brooks, in securing the insurance coverage in question, was either the agent of the Miller Company or an independent broker, and not an agent of the insurer Northern National Insurance Company.

Brooks was not licensed by, nor in any way affiliated with, Northern National Insurance Company. He was in fact affiliated with another unrelated company, the Equitable Life Assurance

Society. Brooks had solicited the Miller Company on behalf of Equitable but Equitable had declined to issue coverage on Mr. Miller because of his heart condition. When Brooks began his search for a company that would issue the coverage, he had never done any business with Northern and in fact had never heard of Northern National Insurance Company. Brooks himself testified that, in attempting to obtain the coverage on Mr. Miller, he acted as agent for the Miller Company and not Northern. The Miller Company was Brooks's good client which he called on an average of once a month. Brooks obtained the policy application for the key man insurance from National's General Agent Barney Haynes as anyone could have done. The premiums Brooks collected were turned over to National's Agent Haynes. The only time National licensed Brooks as its agent was after it approved the Miller Company's applications and issued the coverage and then only for the obvious purpose of paying him commissions.

Even if one is unconvinced that Brooks acted as agent of the Miller Company in the transaction in question, it does not automatically follow that he was the agent of Northern National Insurance Company. If Brooks was in fact not the agent of the Miller Company, he was, at most, merely a broker acting through National's general agent Barney Haynes. G.S. § 58-39.4(b) envisions this very arrangement:

> An insurance broker is hereby defined to be an individual who being a licensed agent, procures insurance through a duly authorized agent of an insurer for which the broker is not authorized to act as agent.

The authority of a broker is defined by G.S. § 58-40.3(a) as follows:

> A Broker, as such, is not an agent or other representative of an insurer, and does not have the power, by his own act, to bind an insurer for which he is not agent upon any risk or with reference to any insurance contract.

Although, as the majority points out, there is authority in the case law of this State which would make Brooks, as broker, the agent of the Miller Company, it is completely unnecessary to go that far in the case now before us. I believe the majority misperceives the proper analysis of the question of whether, in a

given situation, one is acting as "broker" or as "agent." The majority seems to perceive the term "insurance broker" as a *vocational status* of an individual who, in a given transaction, might also be an agent. This is an improper analysis. The appropriate analysis must be done on the basis of the single transaction, such as the one now before the Court, in which the party must be *either* broker or agent, he cannot be both. If one applies the proper analysis to the facts before us, Brooks was a broker in this transaction between the Miller Company and National and not an agent of National.

There was insufficient evidence of Brooks's acting as agent of National to submit that issue to the jury. The credibility of Northern's evidence as to the status of Brooks as either agent of the Miller Company or independent broker was clearly manifest as a matter of law. The trial judge should have granted National's motion for judgment *n.o.v.* I vote to reverse the Court of Appeals.

Justices EXUM and MARTIN join in this dissenting opinion.