* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms the Opinion and Award of the Deputy Commissioner with some modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction of the parties and the subject matter of this action.
2. Plaintiff fell approximately ten feet on 4 May 1999, fracturing both of his heel bones. *Page 2 
3. Plaintiff has medical expenses in relationship to the accident in the amount of $16,361.34. These medical expenses are causally related to plaintiff's 4 May 1999 fall.
4. On 4 May 1999, plaintiff was the president of M.L. Cannon Enterprise d/b/a Turbo Steam. The corporation was organized under the laws of the State of North Carolina.
5. Insurance agent Christopher J. Meinberg, in the years 1998 and 1999, was employed by the Phoenix Company. One of the companies he sold workers' compensation insurance coverage for was Berkley Insurance Company. Mr. Meinberg sold a Berkley Insurance policy to M.L. Cannon Enterprise d/b/a Turbo Steam with the policy being the subject of the current controversy.
6. On all relevant dates, plaintiff's average weekly wage was $613.46, yielding a compensation rate of $408.97.
7. At and subsequent to the hearing before the Deputy Commissioner, the parties submitted by stipulation the following:
 a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. The Deposition Transcript of Dr. Robert D. Teasdall with accompanying medical records, which was admitted into the record, and marked as Stipulated Exhibit (3), and;
 c. The Deposition Transcript of Mr. Alban E. Williams, Jr., which was admitted into the record, and marked as Stipulated Exhibit (4).
8. The issue to be determined is whether through the actions or inactions of Insurance Agent Christopher J. Meinberg or otherwise defendant-carrier is liable for any compensation to which plaintiff would be entitled. *Page 3 
 * * * * * * * * * * * EXHIBITS
At the hearing before the Deputy Commissioner, plaintiff submitted the following:
 a. A Workers' Compensation Insurance Application, which was admitted into the record, and marked as Plaintiff's Exhibit (1);
 b. A Workers' Compensation Insurance Policy, which was admitted into the record, and marked as Plaintiff's Exhibit (2);
 c. The Affidavit of Mr. Timothy Blakely, which was admitted into the record, and marked as Plaintiff's Exhibit (3);
 d. A Correspondence to Plaintiff from Mr. Christopher J. Meinberg dated 5 February 1999, which was admitted into the record, and marked as Plaintiff's Exhibit (4), and;
 e. A Correspondence to Plaintiff from Mr. Christopher J. Meinberg dated 29 January 1999, which was admitted into the record, and marked as Plaintiff's Exhibit (5).
Also at the hearing before the Deputy Commissioner, defendants submitted one-page of handwritten notes of Insurance Agent Christopher J. Meinberg, which was admitted into the record, and marked as Defendants' Exhibit (1).
 * * * * * * * * * * *
Based on the competent evidence of record and the reasonable inferences there from the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was thirty (30) years old, with his date of birth being 20 March 1966.
2. On 4 May 1999, plaintiff was the President of defendant-employer, M.L. Cannon Enterprise d/b/a Turbo Steam, which is in the business of carpet cleaning and fire restoration. On that date, plaintiff was working at a job site when he fell approximately ten (10) feet, fracturing both his left and right heel.
3. The circumstances of plaintiff's injury on 4 May 1999, constituted an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
4. On 4 May 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
5. As of 4 May 1999, plaintiff and insurance agent Christopher J. Meinberg had enjoyed a business-professional relationship for several years. During these years, plaintiff obtained several insurance policies through Mr. Meinberg, including policies for plaintiff's other business, a limousine service, and homeowner's insurance.
6. In late 1998 or early 1999, plaintiff met Mr. Meinberg at a McDonald's restaurant in Greensboro. The purpose of this meeting was to give plaintiff an opportunity to pay the insurance premiums for defendant-employer, a newly formed corporation. The meeting took place at a McDonald's restaurant because plaintiff was traveling to a job site and Mr. Meinberg agreed to meet him at this convenient location to pick up the insurance premium check. At this meeting, Mr. Meinberg was acting as an authorized agent for defendant-carrier. *Page 5 
7. It is undisputed that plaintiff and Mr. Meinberg discussed workers' compensation insurance for defendant-employer as well as commercial general liability insurance by telephone and at the meeting at McDonald's restaurant. Previously, when plaintiff was operating his business as a sole proprietor, plaintiff had excluded himself from coverage under workers' compensation policies provided by defendant-carrier.
8. Plaintiff testified that he talked to Mr. Meinberg by telephone just prior to the meeting at McDonald's and informed Mr. Meinberg that he had just incorporated and wanted to know how much the workers' compensation insurance would cost with him being covered. Based on the amount discussed over the telephone plaintiff testified that he wrote a check in the amount he believed was sufficient to provide workers' compensation insurance that would also cover him. Plaintiff testified that he gave the check to Mr. Meinberg at the meeting and stated to him, "Now this puts me on it" [the workers' compensation insurance policy]. Plaintiff further testified that when Mr. Meinberg informed him that the amount of the check was insufficient to cover him on the workers' compensation insurance policy, he reminded Mr. Meinberg that the check was written for the amount they had discussed over the telephone as being sufficient to include coverage of him. Plaintiff testified that he then offered to destroy the completed check and write another check for the higher amount, but Mr. Meinberg informed him that destroying the first check was not necessary. He further testified that Mr. Meinberg took the check and indicated that plaintiff would later be billed directly by defendant-carrier for the extra amount owed. Additionally, plaintiff testified that upon acceptance of the check, Mr. Meinberg reassured him that he would be covered under the discussed workers' compensation policy as of the date of the meeting. *Page 6 
9. Subsequent to the meeting, defendant-carrier issued a workers' compensation policy for the incorporated defendant-employer containing an endorsement that defendant-carrier contends properly excluded the plaintiff from workers' compensation coverage.
10. Mr. Meinberg testified that he discussed in detail with plaintiff the premium amounts that would result from plaintiff's inclusion or exclusion from the workers' compensation policy. Defendants contend that the premium amounts discussed are on handwritten notes that Mr. Meinberg made during the meeting with plaintiff. Mr. Meinberg testified that plaintiff informed him that he (plaintiff) elected to be excluded from workers' compensation coverage presumably due to the difference in premiums. Defendants reference the contents of Mr. Meinberg's handwritten notes as support for their position that plaintiff chose to be excluded from coverage, specifically the notation stating, "Exclude Owner."
11. Mr. Meinberg testified that he completed a workers' compensation insurance policy application prior to arriving at the restaurant based upon the information given to him previously by plaintiff. Mr. Meinberg further testified that although he had completed the application and had it with him upon arriving at the McDonald's restaurant, he did not bring it inside where he and plaintiff were going to finalize defendant-employer's business insurance. He testified that he took handwritten notes instead.
12. With respect to Mr. Meinberg's handwritten notes, he could not identify or recall the relevance of some of the information contained in his notes. The date on the notes appears to have originally been written as "3-1-98" but the number "1" was written over the number "3" and Mr. Meinberg testified that the number that looks like "98" is "99." Mr. Meinberg admitted that some of the notes on the page did not relate to the meeting he had with plaintiff at McDonald's or defendant-employer's business insurance. It is undisputed that the reference to *Page 7 
"Cannon's Limo," the Lexus ES 300, the names of John Stundent and Connie Fields and the telephone numbers next to their names were not part of the discussion Mr. Meinberg had with plaintiff at the restaurant or immediately prior to the meeting. At the hearing before the Deputy Commissioner, Mr. Meinberg did not offer any good reason as to why he did not bring the application into the restaurant for the meeting where it could have been reviewed and signed by plaintiff.
13. The application completed by Mr. Meinberg is not dated and not signed by plaintiff or Mr. Meinberg. Mr. Meinberg completed the application and mailed it to defendant-carrier outside of plaintiff's presence and without giving plaintiff an opportunity to review it. The undated, unsigned workers' compensation insurance application had a proposed effective date of 19 January 1999 and listed Mike Cannon as "Owner" in the block labeled "Title/Relationship" and listed him as "Exc." in the block labeled "Inc/Exc." Mike Cannon was not specifically excluded as an "officer" of the corporation. Mr. Meinberg testified that he knew how to exclude an officer of a corporation.
14. Defendant-carrier produced two letters dated 25 January 1999 and 4 February 1999 in support of their contention that plaintiff as President of defendant-employer received first a binder of insurance coverage and later the insurance policy itself showing Plaintiff was excluded from coverage. Mr. Meinberg testified that these letters were stored on his computer system and he was only able to print them without the letterhead. The 25 January 1999 letter to plaintiff from Mr. Meinberg notifies plaintiff that the binder is attached and when plaintiff's policy is received in approximately 45 days, Mr. Meinberg would review it first and forward it to plaintiff. The 4 February 1999 letter indicated that plaintiff's policies were enclosed. Neither *Page 8 
letter referenced a policy number. Mr. Meinberg testified that the binder and policy were mailed to plaintiff, but plaintiff testified he did not receive the insurance policy.
15. Plaintiff presented the testimony of Mr. Timothy Blakely, who was an employee of defendant-employer at the time of plaintiff's meeting with Mr. Meinberg. At the time of the hearing before the Deputy Commissioner, Mr. Blakely operated his own business, which is now a competitor of defendant-employer. Mr. Blakely testified that he was present during the plaintiff's meeting with Mr. Meinberg and heard plaintiff inform Mr. Meinberg that he wanted to be covered under the new workers' compensation insurance policy as an officer of the corporation. Mr. Blakely further testified that Mr. Meinberg confirmed that the policy would cover plaintiff. On 25 August 2001, Mr. Blakely executed an affidavit concerning his recollection of the meeting, the contents of which correspond to his testimony. Mr. Blakely's affidavit and testimony are corroborative of plaintiff's testimony regarding the meeting with Mr. Meinberg.
16. The Full Commission gives greater weight and credibility to the testimony of plaintiff and Mr. Blakely concerning what transpired at the meeting with Mr. Meinberg and finds that plaintiff intended to cover himself under defendant-employer's workers' compensation insurance policy and that this intention was transmitted to and understood by Mr. Meinberg. The Full Commission finds the testimony of Mr. Meinberg that he completed the insurance application prior to the meeting but did not take it inside for plaintiff to review to be illogical and incredible. The Full Commission gives little weight to Mr. Meinberg's handwritten notes (Defendant's Exhibit 1), which contain an unclear date, references to items not discussed, references to persons other than defendant-employer or plaintiff and their telephone numbers and other entries that could have been made at earlier or later times. *Page 9 
17. Plaintiff was not excluded from workers' compensation coverage as an "officer" of defendant-employer.
18. Defendants contend that since an insurance policy is simply a contractual agreement between two parties, defendant-carrier's acceptance of the unsigned application and delivery of the policy completed the contract, and acted to bind both plaintiff and defendant-carrier. However, the Full Commission finds there is insufficient, credible evidence of record from which to find that plaintiff received a copy of the policy prior to his 4 May 1999 injury, notwithstanding the 25 January 1999 and 4 February 1999 correspondence, which Mr. Meinberg printed from his computer. The Full Commission gives greater weight and credibility to Plaintiff's testimony that he did not receive this correspondence. Additionally, because the application for insurance was completed by defendant-carrier's authorized agent in this matter and the provision in the application which indicated plaintiff was excluded from coverage does not represent a meeting of the minds between the two contracting parties, plaintiff was not bound by this provision of the insurance contract and that portion of the policy excluding plaintiff from coverage can and should be severed.
19. Defendants also contended that plaintiff was working as an employee of Phoenix Restoration and not defendant-employer on 4 May 1999. However, the owner of Phoenix Restoration, Mr. Alban Williams, refuted this contention during his 22 August 2003 deposition testimony. The Full Commission finds that plaintiff was working for defendant-employer at the time of his injury on 4 May 1999.
20. Dr. Robert Teasdall has been plaintiff's primary treating physician for the injuries he sustained as a result of his 4 May 1999 injury by accident. Dr. Teasdall causally related plaintiff's heel fractures to his 4 May 1999 fall. Due to his injuries, plaintiff was unable to return *Page 10 
to work for defendant-employer for twenty-three (23) consecutive weeks. Additionally, Dr. Teasdall has assigned plaintiff a forty percent (40%) permanent partial disability rating to his left foot as the result of plaintiff's 4 May 1999 injury by accident.
21. As a result of his injury, plaintiff has developed subtalar joint arthritis and is likely to need future medical treatment. According to Dr. Teasdall, about fifteen percent (15%) of patients who have the same type of surgery as plaintiff need hardware removal in the future and another twenty percent (20%) end up needing some type of subtalar fusion. The medical treatment plaintiff received for his injuries was reasonably required to effect a cure, provide relief or lessen his disability.
22. Based on the credible evidence of record, including plaintiff's testimony, as a result of his 4 May 1999 injury by accident, plaintiff was totally disabled for a period of twenty-three (23) consecutive weeks. Dr. Teasdall opined that plaintiff would have been non-weight bearing for ten-twelve (10-12) weeks and not able to return to work for four-six (4-6) months after his injury, although he could have tried sedentary work in about twelve (12) weeks.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. On 4 May 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer resulting in fractures to both heels due to a fall. N.C. Gen. Stat. § 97-2(6). Because there is insufficient, credible evidence of record that plaintiff ever received a copy of the policy issued by defendant-carrier prior to 4 May 1999, and the fact that the workers' compensation insurance application in this matter does not represent a *Page 11 
meeting of the minds between the two contracting parties on whether plaintiff was covered as an insured under the policy, plaintiff was not bound by errors stated in the terms of the policy. See e.g. Fid. BankersLife Ins. Co. v. Dortch, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986) (citing Harrelson v. State Farm Mut. Auto. Ins. Co., 272 N.C. 603, 609,158 S.E.2d 812, 817 (1968)); Connor v. Harless, 176 N.C. App. 402,626 S.E.2d 755 (2006).
2. Plaintiff justifiably relied upon the representations of defendant-carrier's agent who had the power to enter into a binding contract with plaintiff. Defendant-carrier's agent told plaintiff that he was covered under the workers' compensation policy. "Under North Carolina law, an insurer cannot avoid its obligations under a policy when the false answers in the insurance application were inserted by the insurance agent without first propounding any of the questions to the insured."Simpson v. Life Investors Ins. Co. of America, 367 F.Supp.2d 875
(2005). "Knowledge of or notice to an agent of an insurer is imputed to insurer itself, absent collusion between agent and insured." NorthernNat. Life Ins. Co. v. Lacy J. Miller Mach. Co. Inc., 63 N.C. App. 424,305 S.E.2d 568 (1983), aff'd 311 N.C. 62, 316 S.E.2d 256 (1984). An essential element to every contract is mutuality of agreement. D.M.Wright Builders, Inc. v. Bridgers, 2 N.C. App. 662, 667,163 S.E. 2d 642, 645 (1968). "For a contract to bind two parties, they must assent to the same thing in the same sense, and their minds must meet at least with respect to all material terms." Boyce v. McMahan,285 N.C. 730, 734, 208 S.E.2d. 692, 695 (1974). If a particular promise in an agreement is unenforceable because there was no meeting of the minds between the parties, the court must still determine whether it may sever the invalid provision and enforce the remainder. "[A] severable contract is one in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor is it *Page 12 
intended by the parties that they shall be[.] . . . If it appear that the purpose was to take the whole or none, then the contract would be entire; otherwise, it would be severable." Wooten v. Walters, 110 N.C. 251,14 S.E. 734 (1892). There was no meeting of the minds in the instant case on the provision of the contract excluding plaintiff from coverage and that portion of the contract is severed. Since plaintiff was not properly excluded from workers' compensation coverage as an officer of defendant-employer or otherwise, defendant-carrier was liable on the risk for plaintiff's injury on 4 May 1999. N.C. Gen. Stat. § 97-2.
3. Based on the credible medical and other evidence of record, due to his 4 May 1999 injury by accident, plaintiff was disabled for twenty-three (23) weeks and is entitled to be paid by defendant-carrier, total disability compensation at the rate of $408.97 per week for a period of twenty-three (23) weeks. N.C. Gen. Stat. § 97-29.
4. As the result of his 4 May 1999 injury by accident, plaintiff is entitled to be paid by defendant-carrier, permanent partial disability compensation at the rate of $408.97 per week for a period of fifty-seven and six-seventh (56 6/7ths) weeks for the forty percent (40%) permanent partial disability rating assigned to his left foot. N.C. Gen. Stat. § 97-31(14).
5. As the result of his 4 May 1999 injury by accident, plaintiff is entitled to have defendant-carrier pay for all related medical expenses, which currently amount to $16,361.34. N.C. Gen. Stat. § 97-25. Plaintiff is also entitled to future medical treatment for so long as it is reasonably required to effect a cure, provide relief or lessen his disability.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following: *Page 13 
 AWARD
1. Defendant-carrier shall pay to plaintiff temporary total disability compensation at the rate of $408.97 per week for a period of twenty-three (23) weeks. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney fees approved herein.
2. Defendant-carrier shall pay to plaintiff permanent partial disability compensation at the rate of $408.97 per week for a period of fifty-seven and six-seventh (56 6/7ths) weeks for the forty percent (40%) permanent partial disability rating assigned to his left foot. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
3. Defendant-carrier shall pay for all past and future medical expenses incurred or to be incurred by plaintiff as a result of his 4 May 1999 injury by accident. Said expenses currently amount to $16,3613.
4. A reasonable attorneys fee of twenty-five percent (25%) of the compensation awarded to plaintiff herein is approved for counsel for plaintiff. From the compensation owed to plaintiff, this fee shall be deducted and paid directly to counsel for plaintiff.
5. Defendant-carrier shall pay the costs.
This the ___ day of August 2007.
 S/______________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
S/______________________ DANNY LEE McDONALD COMMISSIONER
S/______________________ BUCK LATTIMORE COMMISSIONER *Page 1